MERCHANTS' NATIONAL BANK *vs.* EDWARD THOMPSON & another.

Suffolk.   March 20. — Oct. 20, 1882.   ENDICOTT, LORD & C. ALLEN, JJ., absent.

A number of persons associated themselves together to purchase of a corporation a large parcel of flats. As part of the consideration, the flats were to be filled by the corporation within seven months. The conveyance was made to trustees of the associates; and the interests of the latter were divided into shares, and the trustees issued to each associate a certificate of the number of shares belonging to him. Each associate paid to the corporation in money ten per cent of his proportion of the entire consideration, and executed to the corporation his personal bond for the payment of the remaining ninety per cent of his proportion, payable one half in two years and one half in three years, with interest semiannually, and transferred to the corporation his certificate of shares, as collateral security for the payment of the bond. The bond also contained a clause, by which it was agreed that the whole or any part of it might be paid, when interest was payable, and that when paid either by advance payments, or by the regular payment of instalments, the shares pledged should be released. By the terms of the transfer, the corporation was authorized to receive any dividends which might be made by the trustees, and, on payment of the bond "by said dividends or otherwise," the certificate was to be reassigned to the owner

'Each certificate contained this clause: "Said share is transferable by assignment in writing on this certificate, recorded on the books of the trustees, and not otherwise, except when the share is pledged; in which case the interest of the general owner therein may be assigned in writing, approved by the trustees, and recorded in the books." By the terms of a declaration of trust, the trustees were to manage and dispose of the property from time to time, and to divide the net proceeds of sales among the general owners of the shares at the time of declaring dividends, or as such owners might order in any assignment of their shares as collateral security; and that, unless expressly provided in the instrument creating the pledge, the pledgor should alone be entitled to vote or to receive dividends. *Held*, on a bill in equity, that the corporation, taking one of these certificates as collateral security for the payment of a bond, was not obliged to hold it until paid by dividends arising from the proceeds of the sale of the land, but was entitled, upon default in payment of the bond, to foreclose the pledge by a sale of the certificate.

W. ALLEN, J.   The defendant Thompson was one of several individuals associated to purchase from the Boston Water Power Company, a corporation, certain lands in Boston called the Huntington Avenue Lands.   The lands were conveyed to trustees, upon trusts declared in a declaration of trust, referred to in the deed of conveyance.   The interests of the purchasers were divided into shares, and there was issued to each purchaser a certificate of the number of shares belonging to him.   The certificates contained the following provision, "and said share is transferable by assignment in writing on this certificate, recorded on the books of said trustees, and not otherwise, except when the share is pledged; in which case the interest of the general owner therein may be assigned in writing, approved by the trustees, and recorded in the books."   By the declaration of trust, the trustees had full authority to protect, manage and dispose of the property on the most advantageous terms.   The intention of the purchasers was to sell the property from time to time, in small parcels, after it was improved and prepared for such sales.   At the time of the conveyance, the lands consisted of flats, unfilled and mostly covered with water, and a part of the consideration of the purchase was the agreement of the Boston Water Power Company to fill and otherwise improve the property, within seven months.   The price to be paid, which included the consideration for this agreement of the Water Power Company, was $1 a foot.   The arrangement was that the conveyance should be made to the trustees, and certificates issued to each of the associates named in the declaration of trust for his shares, and that

he should pay his proportion of the whole purchase money to the Boston Water Power Company, ten per cent of it in cash, and the remainder in his bond secured by a pledge of his certificates. The defendant Thompson received the certificate of five shares mentioned in the bill, and gave his bond to the Boston Water Power Company for $23,000, dated December 9, 1871, payable, one half on December 9, 1873, and one half on December 9, 1874, with interest, at the rate of seven per cent per annum, payable July 1, 1872, and semiannually thereafter, and assigned his certificate as collateral security therefor. The plaintiff has acquired the right and interest of the Boston Water Power Company in the bond and certificate. One of the shares has been transferred by the defendant Thompson to the other defendant, but subject to the plaintiff's rights. The bond is unpaid except $1000 of the principal, and $275 of the interest.

The plaintiff now brings this bill in equity, and the question presented is, whether the plaintiff has a right to a decree for a foreclosure, either by an absolute transfer to it, or by a sale, of the interest of the defendants in the certificates. If it has the right of foreclosure, it is entitled to relief in equity, not only from that fact, but because the shares now stand in the names of the defendants on the books of the trustees, and can be transferred only by them, and such transfer, or some instrument of conveyance executed by the defendants, is necessary to give a clear title to them.

The declaration of trust provides that "the net proceeds of sales shall be divided among the parties who may be the general owners of the shares . . . . at the time of declaring dividends, or as such owners may order in any assignment of their shares as collateral, semiannually or oftener;" and that "the trustees shall issue to each purchaser, or his assigns, one or more certificates expressing his interest under this trust," which "shall be transferable only by assignment recorded upon books to be kept by the trustees. In case of any pledge or transfer of such shares as collateral security, the transfer shall express upon the face of the certificate the amount of the debt intended to be secured, and the name of the debtor; and the pledgor or his assigns, unless expressly provided in the instrument creating the pledge, shall alone be entitled to vote or to receive dividends, or be

notified as herein provided, and in general shall alone be entitled to the rights of an owner. And, in general, the party appearing upon the books of the trustees to be the owner shall alone be deemed entitled to notice, or to any of the rights of an owner." It is further provided, that "any shareholder or his assigns may at any time sell his shares, or any of them, but subject in all respects to the terms of this trust; and the assignee in all transfers must be approved by the trustees," with the further provision that the owner may sell to an assignee not approved by the trustees if they do not within twenty days offer to take the stock for the common benefit at the price offered. The instrument of the assignment of the certificate to the Boston Water Power Company authorized the company and their assigns to receive the dividends.

We see nothing in the facts of this case to prevent the application of the general rule, that the pledgee of personal property has authority to sell the property after default in the payment of the debt secured. Whatever rights the plaintiff has, it holds under the assignment of the certificate, and the transfer of the certificate will give whatever rights it is entitled to, whether the right represented in the certificate is a chose in action or an equitable interest in land.

The pledge of property to secure the payment of a debt implies authority to change the property into money to apply on the debt, if the pledgor fails in his duty to pay it; the usual and ordinary mode of changing property into money is by selling it, and a pledge ordinarily includes a power of sale upon default. Story on Bailments, § 308. *Parker* v. *Brancker*, 22 Pick. 40, 46. The exceptions to the rule illustrate it. A pledge of commercial paper does not include authority to sell it, at least before it is due and default made in its payment, because the proper and usual mode of converting it into money is to receive the money when it becomes due upon it. *Wheeler* v. *Newbould*, 16 N. Y. 392. *Fletcher* v. *Dickinson*, 7 Allen, 23. So a savings-bank book cannot be sold by a pledgee. *Boynton* v. *Payrow*, 67 Maine, 587. In New Jersey, an ordinary note and mortgage pledged cannot be sold; *Morris Canal & Banking Co.* v. *Fisher*, 1 Stock. 667; but coupon bonds may be. *Morris Canal & Banking Co.* v. *Lewis*, 1 Beas. 323. The question

is one of contract; where there is no express agreement, the intention of the parties, as to the mode by which the security shall be converted into money, must be implied from the nature of the property pledged, and the circumstances of the transaction.

The defendants contend that the intention of the parties to the pledge was, that the pledgee should rely, as the means of meeting any default in payment of the bonds secured, upon the dividends to be made from the proceeds of land to be sold, and not upon a sale of the certificates; and rely, in support of this, upon the fact that, by the agreement of the Boston Water Power Company, the pledgee, the filling and improvement of the lands were to be completed by it, within a period which would expire before the bonds would become due, upon the expectation of all parties that the land would be speedily sold after the completion of the improvements, and upon various provisions of the certificate and the declaration of trust, which have been referred to.

It may have been the expectation of the parties that the bonds would be paid from the proceeds of the sales of the land, but that intention is not expressed or implied in the terms of the assignment, or the circumstances under which it was made, or the nature of the property pledged.   The interest of the defendants, constituting the property pledged, was put in the form of certificates, like stock in a corporation, and particular provisions made for its transfer.   It was evidently the intention of the parties that the associates should have power to sell their interests, and their expectation that shares would be frequently transferred, absolutely, and in pledge, the only restriction not usual in regard to stock in corporations being the right of the trustees to purchase when a proposed assignee should not be approved by them. The certificate was evidence not only of a right to receive dividends, but of the right of the owner of it to have his proportion of the land set off to him in severalty, either by the consent of all parties in interest, or, upon the determination of the trust, by the action of a majority of owners of the certificates, and of other rights in the management of the property.   The assignment of the certificate is general, to be held as collateral security for the due performance of the conditions of the bond, and provides that, on the payment of the bond by dividends or otherwise,

the certificate shall be reassigned to the owner or his assigns. In the bond itself it is agreed that the whole or any part of it may be paid on either of the days fixed for the payment of interest, and that when paid, either by advance payments or dividends, or by the regular payment of instalments, the shares pledged shall be released.

An assignment in such terms of a certificate representing such an interest, to secure the payment of a debt of the amount of ninety per cent of the par value of the shares, must have been intended to give something more than an authority to receive dividends as they should be declared.    The assignment gives that authority expressly, but, by the terms of the deed of trust, that was necessary to give to the pledgee the right to the dividends.    This provision itself indicates that a pledge of the stock was understood to give rights other than that to receive dividends.    The fact that the Boston Water Power Company, the pledgee, had agreed to fill and improve the land, and that that agreement was part of the consideration of the bond, may have furnished a reason for securing the performance of that agreement by some provision in the bond or assignment of shares; but no such provision is found, and the fact itself is of little significance.    The agreement was with the trustees, and the bond and certificate were, as part of the transaction, assigned to them by the Boston Water Power Company as security for its performance.    The plaintiff holds by assignment of the trustees and the release of the company.

We do not think that this question is affected by the provision in the declaration of trust, that the pledgor, unless specially excepted, shall have the right to vote and receive dividends, and shall alone be entitled to the rights of an owner.    This refers to him while he is pledgor; but, when the certificate is transferred under a foreclosure, he ceases to be the pledgor, and another person is substituted for him as owner, in compliance with the terms of the trust.    It does not affect the relation between the pledgor and pledgee, but their relation to the trustees and associates while they retain that relation between themselves.

It was argued for the defendants, that the plaintiff was affected by any equities that existed between the defendants and the Boston Water Power Company; but nothing appears which

would show a defence against the company, if this suit were between it and the defendant Thompson.

We think that by the assignment to the Boston Water Power Company the entire interest of the defendant represented in the certificate was pledged to secure the debt, and that the ordinary right of foreclosure implied in a pledge of stock or personal property was included. The debt has long remained unpaid, and we think that the plaintiff is entitled to the relief sought.

The transfer, whether to the plaintiff itself or to a purchaser, must be with the approval of the trustees, or after refusal by them to purchase, as provided in the declaration of trust. If the certificate is sold, it would be subject to that condition; if it is transferred to the plaintiff, after the amount at which it is to be taken shall be ascertained, the trustees should have an opportunity to take it at that sum, as that will be sufficient compliance with the provision of the trust.

The case must be referred to a single judge to ascertain the amount due and settle the decree.          *Ordered accordingly.*

*R. Gray & H. W. Swift*, for the plaintiff.

*R. M. Morse, Jr.*, for the defendants.