NATHANIEL B. STEVENS & another *vs.* ISAIAH H. WILEY
& another.

Suffolk.    December 13, 1895. — February 29, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Equity — Evidence — Pledge — Promissory Note — Conversion — Account.*

If, upon the conveyance by A. of an article, the vendee gives a receipt for the
same reciting that " we are to credit A. five hundred dollars on our account
against A. and B.," who were formerly copartners and indebted to the vendee,
it is not open to the vendee, upon a bill in equity for an account, to show by
oral evidence that the agreement was different from that recited in the receipt.

If the pledgee of a promissory note takes from the maker two other notes payable
to the pledgee's own order in renewal of the original note, which he surrenders
to the maker, and afterwards renews the two notes from time to time, receiving
small payments, and finally the amount due on one of the notes so taken in re-
newal is combined with the amount of another claim held by the pledgee against
the maker, and a new note on time is taken from him for the amount of both
claims, the acts of the pledgee amount to a conversion of the original note, and
he is liable to the pledgor for the full amount of it.

BILL IN EQUITY, filed in the Superior Court on March 9,
1891, by Nathaniel B. Stevens, alleging that on March 1, 1887,
and prior to that date, the plaintiff Stevens was in copartnership
with one D. J. T. Oldham, doing business in Boston under the
firm name of the New England Paint and Varnish Company;
that on or about March 1, 1887, the firm became indebted to the
defendants, doing business under the firm name of Wiley and
Richardson, in a large sum of money, the exact amount of which
indebtedness was not known to the plaintiff, but claimed by the
defendants to be the sum of $4,594.80; that subsequently the
plaintiff became indebted to the defendants for merchandise in
the further sum of $624.87 ; that between March 1, 1887, and
May 1, 1889, the plaintiff paid the defendants at sundry times,
on account of such indebtedness, $397.22 in cash, and $2,866.19
in merchandise ; that from time to time since March 1, 1887,
the plaintiff indorsed, transferred, and delivered to the defend-
ants twenty promissory notes for various sums, held by himself
against sundry persons, amounting in all to the sum of $1,509.23 ;
that some of the notes were payable to the New England Paint

and Varnish Company, and some to Oldham, and indorsed to the plaintiff, and some were payable to the plaintiff; that the notes were delivered to the defendants with the understanding and agreement that the defendants should collect the same and apply the proceeds thereof on account of the plaintiff's indebtedness to them; that the defendants did collect the notes, and received thereon the above named sum of $1,509.23; that from time to time after March 1, 1887, the plaintiff became the owner and holder of twenty other notes for various sums, against sundry persons, amounting in all to the sum of $2,104.79; that some of the notes were payable to the firm, some to Oldham, and some to the plaintiff; that he was not able to state which were payable to the firm and which to Oldham, but they were all indorsed to the plaintiff, and were his individual property; that he indorsed and transferred the notes to the defendants, with the understanding and agreement that they should collect the same as far as possible, apply the proceeds thereof on account of the plaintiff's indebtedness to them, and, upon the payment in full of such indebtedness, the defendants were to transfer and redeliver to the plaintiff all notes which were then in their hands, and also account to the plaintiff for any balance of money so collected, after the payment to themselves of such indebtedness; that the defendants have credited the plaintiff with the sum of $260.19 collected on the notes above mentioned; that on or about August 19, 1887, the plaintiff turned over and delivered to the defendants twenty-nine book accounts for various sums of money of the New England Paint and Varnish Company, but which were the exclusive property of the plaintiff, such accounts being against sundry persons for merchandise sold and delivered to them; that the defendants took these accounts upon the same understanding and agreement above set forth, with reference to the notes; that the defendants have credited the plaintiff with money collected on such accounts to the amount of $38.27; that on or about October 8, 1887, the plaintiff sold and delivered to the defendants a yacht, at an agreed price of $500, which the defendants received and accepted, and agreed to credit him therefor, on account of his indebtedness, said sum of $500; that the plaintiff had frequently requested the defendants to render him an

account of the amounts collected by them on the several notes and accounts, and to pay over to him any balance which should be found due him, and to redeliver to him all the notes and accounts remaining uncollected in their hands ; that he had frequently offered, and was ready, to pay the defendants any balance which might be found due from him to them upon accounting together; that the defendants had neglected and refused to render any account, or to pay over the balance which would be found due to the plaintiff on accounting together, or to return to him the uncollected notes and accounts in their hands ; and that the defendants had collected a large sum of money on the notes and accounts which they had not accounted for, and had not credited to the plaintiff, or paid to him, as they undertook and agreed to do.

The prayer of the bill was for an account, and for payment of the amount found due on such account; and for general relief. By an amendment to the bill, Oldham was joined as a party, and in the subsequent proceedings was treated as a joint plaintiff.

The case was referred to a master, who found and reported the following facts, among others. The defendants, who were importers and manufacturers of paint and varnish, sold and delivered goods to the plaintiffs, who were copartners under the firm name and style of the New England Paint and Varnish Company. The plaintiffs were in the habit of turning over to the defendants notes and accounts held by the plaintiffs against various customers, which the defendants were to collect and were to apply the proceeds thereof towards the payment of the goods so sold and delivered. Some of these notes and accounts have been collected by the defendants.; and the others which have not been collected, and about which there is no dispute, the defendants are ready to return to the plaintiffs. The defendants filed a statement of accounts consisting of a large number of items. Among the items about which there was a dispute were the following: " Item 171. To G. M. Bohndell notes unpaid and due, $176.12." " Item 314. By Yacht on account, $500." On October 8, 1887, the plaintiff Stevens conveyed the yacht to the defendants by a bill of sale. At the same time the bill of sale was drawn, the defendants

gave to Stevens a paper, signed by them, as follows: "Received of Nathaniel B. Stevens, yacht Ida, by bill of sale of even date, and we are to credit Stevens five hundred dollars on our account against Stevens and Oldham, doing business under the style of New England Paint and Varnish Co."

This credit was actually given as it was agreed. The master ruled that evidence was admissible to show that the yacht was thus sold to the defendants as collateral security, and also to show the real value of the yacht; and found that the yacht was turned over or sold to the defendants as collateral security, and that the defendants were entitled to charge back to the plaintiffs the difference between the nominal and the real value of the yacht, which was the sum of $250.

It was agreed that Stevens let Wiley have a Bohndell note. The weight of the evidence was that this note was not to be credited as cash at its face value, but that it was taken as security, like all the other notes, and to be charged back if not paid. The evidence introduced before the master, touching the defendants' method of treating this note, was substantially as follows.

On February 7, 1888, the plaintiff Stevens indorsed and delivered to the defendants a note of $146, signed by Bohndell as maker, and payable to the order of Stevens, it being then overdue. Upon receiving the note, the defendants entered it on their books in the account with the plaintiff as a credit. On the same date the defendants charged it to Bohndell, with $1.20 interest due thereon, in an account which they had in their books with Bohndell, and which contained other items of charges. In renewal of this note the defendants took two notes from Bohndell, payable to their order. These notes were renewed from time to time, small payments being made thereon, until February 20, 1889, when one note for $48.71 was taken, and on July 10, 1889, another note for $80.82 was taken, both payable to the order of the defendants. These two notes represented the amount due on the renewals of the original Bohndell note. No further payments have been made on them.

The defendants held another note for $51.82 against Bohndell, in no way connected with the original note. This third note was combined with the one for $48.71, interest added, and

a new note taken for the two from Bohndell for $95.30, dated September 3, 1889, on three months, payable to the order of the defendants; and these notes were duly entered in the defendants' account with Bohndell, but not in their account with Stevens until December 31, 1891, when they rendered their final account with him. The defendants claimed the right to charge back the note for $80.82, and also the one for $48.71, which constituted a part of the consideration of the note for $95.30 above mentioned, making $129.53 in all.

The original note was delivered up to Bohndell when the two notes were taken in renewal, and the defendants are ready to deliver to the plaintiff the note for $80.82, and the note for $95.30, in place of the original Bohndell note.

A decree was entered for the plaintiffs, among other things, disallowing the item in the defendants' account as to the Bohndell notes, and allowing $500 as the value of the yacht; and the defendants appealed to this court.

*D. C. Linscott*, for the defendants.

*C. F. Hall*, for the plaintiff Stevens.

ALLEN, J. 1. A conveyance, absolute in terms, of real or personal property, may be shown in equity by parol evidence to have been taken as collateral security. *Campbell* v. *Dearborn*, 109 Mass. 130. *Reeve* v. *Dennett*, 137 Mass. 315. *Minchin* v. *Minchin*, 157 Mass. 265. But in the present case the defendants gave a receipt specifying the terms on which they received the conveyance of the yacht, viz.: " We are to credit Stevens five hundred dollars on our account against Stevens and Oldham." This was an agreement by the defendants to take the yacht in satisfaction of their account to the amount of five hundred dollars, and it was not open to the defendants to show by parol evidence that the agreement was something else. *Langdon* v. *Langdon*, 4 Gray, 186. *Squires* v. *Amherst*, 145 Mass. 192, and cases cited.

2. The other question is whether the defendants are bound to account to the plaintiffs for the full amount of the Bohndell note. The master found that it was not to be credited by the defendants as cash, at its face value, but that it was taken as security, and to be charged back if not paid. In other words, it was received in pledge, or as collateral security. The au-

thority of the defendants in respect to it was quite limited. No special authority was shown, and therefore their authority depends on general rules of law. The pledgee of a note has only a special property in it, the general property remaining in the pledgor. He is to collect it if he can, but is not at liberty to sell or dispose of it, or compromise it. *Merchants' National Bank* v. *Thompson*, 133 Mass. 482, 485. Story, Bailm. § 321. In the present case the defendants in the first place took from Bohndell two notes, payable to their own order, in renewal of the original note, which they surrendered to him. These renewal notes would be subject to any defences or equities which Bohndell might have against the defendants. They afterwards renewed these two notes from time to time, receiving small payments, and finally the amount due on one of these notes so taken in renewal was combined with the amount of another claim held by them against Bohndell, and a new note on three months was taken from him for the amount of both claims. In this Commonwealth there is a *prima facie* presumption that a note taken in renewal of or for an antecedent debt is received in payment. *Ely* v. *James*, 123 Mass. 36. *Green* v. *Russell*, 132 Mass. 536. *O' Conner* v. *Hurley*, 147 Mass. 145. This presumption is confirmed by the facts that the defendants took the new notes payable to their own order, and delivered up the original note to the maker. It is not stated in express terms that any of the renewal notes except the last was on time, but from the frequency of the renewals the inference seems fair that time was agreed to be given by the defendants to Bohndell. Taking all the facts together, the acts of the defendants amounted to a conversion of the note, which they held as collateral, and rendered them liable to account to the plaintiffs for the full amount of it. *Dewey* v. *Bell*, 5 Allen, 165. *Depuy* v. *Clark*, 12 Ind. 427. *Freeman* v. *Benedict*, 37 Conn. 559. *Garlick* v. *James*, 12 Johns. 146. *Gage* v. *Punchard*, 6 Daly, 229. *Nexsen* v. *Lyell*, 5 Hill, (N. Y.) 466. *Southwick* v. *Sax*, 9 Wend. 122. The plaintiffs were not bound to accept the new notes payable to the order of the defendants, and subject to possible defences or equities, in place of their own note.

In other States there are some decisions which tend somewhat to support the other view; but so far as they have come to our

notice, the cases may be distinguished in their facts from the present case. *Hunter* v. *Moul*, 98 Penn. St. 13. *Exeter Bank* v. *Gordon*, 8 N. H. 66. *Randolph* v. *Merchants' National Bank*, 9 Lea, (Tenn.) 63.                    *Decree affirmed.*