Moses, Exr., *v.* Grainger.

(*Knoxville.*     October   20,   1900.)

1. BILLS AND NOTES.   *Sale of collaterals by indorsee.*

The holder by indorsement of a note payable to a person named, or order, may execute a power of attorney therein contained authorizing sale of collaterals upon the maker's default in making payment.   (*Post, pp. 8–10.*)

2. COLLATERAL SECURITIES.   *Sale of.*

In the absence of express authority, the pledgee has no right to sell or dispose of collateral securities, such as bills and notes, upon default in the payment of the original debt.   (*Post, p. 11.*)

3. SAME.   *Same.*

A pledgee, who has express authority to sell collaterals, must exercise that power with fairness and due consideration for the rights of the pledgor.   Hence, the sale of collaterals after the original debt had been due for nearly four years, and nearly all paid, without other than a general public notice which gave no information to the pledgor, is void, and confers no title upon the purchaser.   (*Post, pp. 10, 11.*)

4. APPEAL.   *Brings up whole case or nothing, when.*

An appeal from a decree settling a single and indivisible controversy, however worded, must be treated as bringing up the entire case, or be dismissed as bringing up no part of it, as the Court may elect.   (*Post, pp. 11–13.*)

Case cited: Williams *v.* Burg, 9 Lea, 456.

FROM   KNOX.

Appeal   from   Chancery   Court   of   Knox   County. GEO.   W.   HENDERSON,   Special Ch.

---

---

GREEN & SHIELDS for Moses.

CHAS. T. CATES, JR., for Jarnagin.

BEARD, J. On the 11th of May, 1895, Frank A. Moses executed to the Central Savings Bank of Knoxville his promissory note for $301.10, payable ninety days after date "to the order of the payee." and pledged as collateral to secure it the note which is the subject of controversy in this case. The pledge of the collateral, as stipulated in the original paper, is in these words: "Having deposited with said bank as collateral security for the payment of this note, with authority to sell the same at public or private sale on the non-performance of this promise, and without notice, one note for $500, signed by F. A. Moses and indorsed by Charles H. Moses, Henry L. Moses, and Mary P. Moses." The $500 note thus pledged was dated 10th December, 1892, and matured six months after date.

Long after maturity of the original note, to-wit: in February, 1899, and after, by various payments made upon it by its maker, there was left due on it, in principal and interest, only $86.50, the Central Savings Bank passed into the hands of a receiver, who sold a considerable part of its assets, including this note, to Galbraith & Maloney, of Knoxville. With this note was also delivered to them the collateral in question. Having received these assets, on the 7th of March,

1899, these transferees posted the following notice: "On Thursday, March 9, 1899, at 11 o'clock A.M., we will sell to the highest bidder, for cash, in front of the courthouse door in Knoxville, certain collaterals attached to various notes assigned to us by the Central Savings Bank, which collaterals will be produced at the sale. This March 7, 1899. (Signed), Galbraith & Maloney."

Pursuant to this notice and without any demand upon the maker of the original note, these parties undertook to sell the collateral in question, when S. C. Jarnagin, having bid for it the sum of $87.50, it was delivered to him as the purchaser. Thereupon, claiming to be its owner under this purchase, he filed his petition in this cause, instituted to wind up the estate of Mary P. Moses, now deceased, one of the indorsers of this collateral, asking that he be given a decree for the face value of the note and interest upon it. The Chancellor allowed a decree for the sum of $87.50, the amount paid by him. From this decree he prayed an appeal, and the Court of Chancery Appeals reversed the Chancellor and dismissed his petition. From the finding of this latter Court he has appealed.

For the purpose of this case it may be conceded that the power of sale given in this contract of pledge was not a personal trust to be exercised by the payee alone, but under the terms "to the order of" would pass to an assignee as

in a mortgage, where the authority is given to the mortgagee or "assigns" (2 Pingrey on Mortgages, sec. 1320), but this concession will not avail the petitioner, Jarnagin. For there is an objection, we think, fatal to this claim. As has been seen, the original note was nearly four years past maturity at the time of this attempted sale. The first holder had, from time to time, accepted payments upon it until there was only fifty dollars of the principal due upon it. No demand was made upon its maker by Galbraith & Maloney to pay it and redeem the collateral, nor was any notice of the purpose to sell given him, the only notice being the one hereinbefore set out.

By the terms of the pledge the bank was vested "with authority to sell the same (the collateral) at public or private sale on the nonperformance of this promise [that is, the promise to pay "ninety days after date"] without notice." But is there any law which would regard a sale made by the bank under the conditions mentioned as a proper exercise of this authority? The acceptance of payments from the maker of the original note at different times after maturity and the indulgence given to him for near four years necessarily lulled him into a sense of security. He had a right to suppose that, under these circumstances, and after his note had been reduced to a trifling balance, that before exercising the right to sell, that a demand would be made upon

him to redeem his collateral. The general rule is, in the absence of express authority the pledgee has no right to dispose of collateral securities such as bills and notes upon default in the payment of the original debt. *Juliet Iron Co.* v. *Sciots, etc., Co.,* 82 Ill., 548 (S. C., 20 S. R., 347); *Morris Canal Co.* v. *Lewis,* 12 N. J. E., 321; *Stevens* v. *Wiley,* 165 Mass., 402. It is otherwise, however, when the authority to sell is given by the contract of pledge. But "such a power, so far as it enables the pledgee to extinguish the right of the pledgor to redeem, will, as other contracts affecting equities of redemption, be construed favorably for the interests of the pledgor so far as is consistent with the rights of the pledgee. The power of sale must be exercised with a view to the interest of the pledgor as well as of the pledgee, and the sale must not be forced for barely enough money to secure the payment of the debt." Colbrook on Collateral Securities, sec. 118.

We think the sale complained of was in disregard of these equitable principles, and if it had been made at the instance of the original holder, would not have been tolerated by a Court of conscience; no more favor will be shown to it when made by Galbraith & Maloney under a notice which gave no information to the pledgor.

But it is said that at least the Court of Chancery Appeals was in error in reversing that part of the Chancellor's decree which gave the

petitioner, Jarnagin, a recovery of $87.50, as the complainant did not appeal, and petitioner only appealed from it in so far as it limited his recovery to that sum.

We take it, the purpose of the petitioner was to limit his appeal so that whatever might be the ultimate result of his contention, he would at least save the sum so decreed. But we do not think he did this. The wording of the decree on this point is as follows: "From the foregoing decree so limiting his recovery the said S. C. Jarnagin prays an appeal," etc. As we construe it, this is an appeal that brings up the whole case. But if in error in this, it cannot avail appellant. The controversy is as to his ownership of this note. He claims the whole of it, and is entitled to the whole or no part of it. His appeal necessarily involves the whole case—that is, his title to the note as an entirety. He cannot shape his contention in this Court so as to eliminate this question. He cannot bring up one part of a single controversy, but in appealing opens up the whole field. If this was not so, the Court of Chancery Appeals would have been placed in the incongruous position of holding that the petitioner acquired nothing by the purchase of the notes, and yet affirming the decree giving a part of it. It would be otherwise if there had been several subjects of litigation settled by decree in the Court below. One appeal limited to one

of these subjects would leave the decree operative as to the remainder.

But even if the appeal was limited, it was the duty of the Court of Chancery Appeals, as was said in *Williams* v. *Burg,* 9 Lea, 456, "to dismiss this special appeal as improperly granted, or treat it as bringing up the entire case." That Court adopted the latter alternative, and their decree reversing the decree of the Chancellor and dismissing the petition of Jarnagin, is affirmed.