JOSIAH B. STEBBINS *vs.* NORTH ADAMS TRUST COMPANY.

Berkshire.     September 19, 1922. — November 8, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Conversion,* Of savings bank book. *Bills and Notes,* Payment, Renewal. *Pledge. Evidence,* Presumptions and burden of proof. *Damages,* In tort.

At the trial of an action against a trust company for the conversion of a savings bank book, there was evidence tending to show the following facts: The book, with an order signed by the plaintiff directing the payment to the trust company of the deposit represented by the book, was delivered to the trust company as collateral security for the payment of a note to the trust company signed by a corporation as maker and by the plaintiff and others as indorsers. The note was payable in two months. At its maturity, a new note, by the same makers with the same indorsers and bearing on its face a statement that the plaintiff's savings bank book was pledged to secure its payment, was given to the trust company and the original note was returned. This process was gone through with every two months for four years and ten months, the trust company each time charging the corporation on its books with the amount of the matured note, crediting it with the amount of the renewal note and charging it with discount and from time to time rendering to the corporation a statement showing the transactions. The matured notes were returned to the maker and were destroyed by it. At the end of four years and ten months, the plaintiff refused to indorse further notes. Renewal notes not having the plaintiff's indorsement still were given every two months, however, bearing the statement that the plaintiff's bank book was held as a pledge to secure the payment of the note. Less than six months later, the plaintiff asked the trust company for his bank book and one year and six months later he demanded it and thereafter brought this action. There was testimony of officers of the maker and of the trust company that the renewal notes were given as evidence of the original debt. The officer of the trust company also testified that the matured note in each instance was returned to the maker because "It was their property; it was no use to us. It didn't belong to the trust company at all after it was paid; not after it was taken up." The jury found for the plaintiff. *Held,* that

(1) A finding, that the defendant's retention of the bank book as security

for any note or notes given after the plaintiff first had demanded its return was without right, was warranted unless its retention was authorized because it continued to be security for the indebtedness evidenced by the original note or by the unmatured renewal note held at the time of the first demand;

(2) The question, whether the debt represented by each note as it matured was paid and extinguished by the renewal note, or it remained in existence, was for the jury;

(3) A finding for the plaintiff was warranted.

A conversion of a savings bank book entitles the person deprived thereof to elect to hold one who wrongfully assumes dominion of it to the full responsibility for his act, and renders such person liable for the value of the deposit represented by the book.

TORT for the conversion of a savings bank book. Writ dated July 16, 1920.

In the Superior Court, the action was tried before *Fosdick,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. It then asked for the following rulings:

"1. That on the evidence the plaintiff cannot recover.

"2. If the plaintiff pledged his bank book, as security for the payment of the original debt, and the original note which he indorsed, the renewal of such note, or even the substitution of another note therefor, in the absence of an agreement that such renewal or other note should be in payment of such original debt and note, there is no presumption that the giving of such renewal or other note was in payment of the original debt or note, so as to discharge the pledge of such bank book.

"3. To recover in this action, the plaintiff must show by a fair preponderance of the evidence, that the debt for the payment of which the bank book was pledged, has been paid.

"4. If the plaintiff pledged his bank book as security for the payment of the original debt and note, the taking by the defendant of a renewal note does not discharge such pledge.

"5. The giving of a renewal note, without the indorsement of the plaintiff, but signed by all of the other parties to the note originally given, does not operate as a payment of the debt for the payment of which the bank book was pledged, nor discharge the pledge of said bank book, in the absence of an agreement to that effect, and the burden of proving that it was the intention to pay the original debt is on the plaintiff.

"6. If the plaintiff indorsed several renewal notes, his bank book remaining as security for the original debt, but finally refused to longer indorse such renewal notes, which were thereafter given by the other promisors on said original note, and renewals thereof, without the indorsement of the plaintiff thereon, who upon his refusal to indorse or thereafter demanded of the defendant his bank book, the pledge of said bank book still remained in full force, undischarged by such refusal to indorse and such demand, and the giving of such renewal note without plaintiff's indorsement and his demand for the bank book of the defendant did not discharge the pledging of said bank book nor give the plaintiff a right to recover herein."

The rulings were refused. Upon the return of the special findings by the jury, described in the opinion, the judge ordered a verdict for the plaintiff in the sum of $.15; and both parties alleged exceptions.

The case was submitted on briefs.

*H. P. Drysdale & J. L. Burns*, for the plaintiff.

*J. E. Magenis & M. E. Couch*, for the defendant.

JENNEY, J. On April 24, 1913, the H. C. Wood Company, Inc. borrowed $1,500 from the North Adams Trust Company and gave its note for that amount payable in two months. The note was indorsed by the plaintiff and two others who were officers of the Wood company; that corporation deposited with the trust company a bank book showing a deposit of over $1,000 in the Hoosac Savings Bank in the name of and belonging to the plaintiff, as collateral security for the payment of the note, and an order on that bank signed by him directing the payment to the trust company of the amount stated. There was other collateral in which the plaintiff was not interested. On the maturity of this note, the Wood company gave a renewal note for two months for the same amount, which was also indorsed by the plaintiff and secured by the same collateral. Thereafter new notes, secured by the same collateral and bearing the same indorsements, were given from time to time every two months up to and including February 24, 1918, in like form as the original. During all this time the Wood company had a banking account with the trust company. On the maturity of each note and the receipt of a renewal note, that company was charged with the

amount of the one maturing and given credit for that of the renewal less a charge for discount. From time to time statements of account were rendered by the trust company to the Wood company and the notes which had been renewed were returned to the latter company with other vouchers relating to the account, and the returned notes have since been destroyed by the Wood company. The same course has been followed as to matured notes given after February 24, 1918.

Before the maturity of the note dated on the day last named, the plaintiff refused to indorse any other renewal notes, and that coming due on April 24, 1918, and those coming due at intervals of two months thereafter until the time of the commencement of this action were not indorsed by him. These notes purported to pledge the plaintiff's bank book as collateral for their payment.

There was no evidence that the plaintiff upon his refusal to give further indorsement demanded his bank book or order or notified the trust company that he forbade their further use as collateral until August, 1918, when a renewal note was outstanding to which the plaintiff was not a party and which on its face included a pledge of the bank book as security for its payment. At that time the plaintiff went to the bank and asked for his book. On February 25, 1920, demand for the bank book was made in his behalf and the present action for its conversion was instituted on July 16, 1920. The demands for the book were refused and it is still in the possession of the trust company. There was no evidence of any express agreement between the Wood company and the trust company or between the latter company and the plaintiff that the several notes were to be accepted as payment or discharge of the original indebtedness, or that they were to be held as security for the original debt, although the person who was treasurer of the Wood company at the time the first renewal note was given, testified that it was the "intention" of that company "to give it as evidence of the original debt and in renewal," and although the treasurer at that time of the trust company testified that it was the "intention" of the trust company "to carry on the loan, to carry on the original debt." This witness on cross-examination testified that when a new note was given the old note was returned to the Wood company because "It was their property; it was no use

to us.   It didn't belong to the trust company at all after it was paid; not after it was taken up."   The person who has been treasurer of the trust company since January 1, 1919, testified that it was the intention of the trust company in receiving these notes to "extend the original obligation."

At the close of the evidence the defendant excepted to the denial of its motion for a directed verdict in its favor.   The other exceptions relate to the refusal of requests for instructions.   The plaintiff's liability as indorser on the original note and upon the renewal notes to which he was a party is not involved.   See *Huse* v. *Alexander,* 2 Met. 157.

If we assume that the trust company was authorized to hold the bank book until the maturity of the note falling due after the plaintiff's first demand for its return, we think that the facts justified a finding by the jury that its use as security for any note or notes thereafter given was without the assent of the plaintiff and that its retention after the second demand was without right unless authorized because it continued to be security for the indebtedness evidenced by the original note, or by the unmatured renewal note held at the time of the first demand.

The long established presumption here existing is that the giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded. While that presumption is rebutted where it appears that thereby the security held for the original debt will be released, nevertheless it is ordinarily a question of fact whether such a result follows. *Curtis* v. *Hubbard,* 9 Met. 322.   *Pomroy* v. *Rice,* 16 Pick. 22. *Fowler* v. *Bush,* 21 Pick. 230.   *Taft* v. *Boyd,* 13 Allen, 84.   *Parham Sewing Machine Co.* v. *Brock,* 113 Mass. 194.   *Woods* v. *Woods,* 127 Mass. 141, 149.   *Dodge* v. *Emerson,* 131 Mass. 467.   *Cotton* v. *Atlas National Bank,* 145 Mass. 43.   *O'Conner* v. *Hurley,* 147 Mass. 145.   *Spooner* v. *Roberts,* 180 Mass. 191.   *American Malting Co* v. *Souther Brewing Co.* 194 Mass. 89.   *Cary Brick Co.* v. *Wheeler,* 210 Mass. 338.

The presumption exists although the indebtedness claimed to have been discharged was a negotiable instrument.   *Adams* v. *Jenkins,* 16 Gray, 146.   *Taft* v. *Boyd, supra.   Dodge* v. *Emerson, supra.   Cotton* v. *Atlas National Bank, supra.   O'Conner* v. *Hurley, supra.   Stevens* v. *Wiley,* 165 Mass. 402.   *Kendall* v. *Equitable*

*Life Assurance Society,* 171 Mass. 568.    *Bennett* v. *Tremont Securities Co.* 221 Mass. 218, 222.    It is not affected by the fact that the new obligation is in renewal of a prior note.    *Wyman* v. *Fabens,* 111 Mass. 77, 81.    *Stevens* v. *Wiley, supra.*    ". . . the fact that such presumption would deprive the creditor taking the note of the substantial benefit of some security . . . has been held to be sufficient evidence to meet and repel" it.    *Lovell* v. *Williams,* 125 Mass. 439, 441, 442.    *Davis* v. *Parsons,* 157 Mass. 584.    *Jeffrey* v. *Rosenfeld,* 179 Mass. 506.

In the present case the question whether the indebtedness continued was one of fact.    The effect of the surrender of the matured notes to the maker upon their renewal and of the method in which the account was kept by the trust company was for the jury in connection with the other facts.    *Tracy* v. *Lincoln,* 145 Mass. 357. *Slade* v. *Mutrie,* 156 Mass. 19.    *Hagan* v. *Norton,* 188 Mass. 47. *Attorney General* v. *American Legion of Honor,* 206 Mass. 183.

If the jury found that the obligation which the pledge was given to secure had been satisfied, a refusal to surrender the bank book upon demand thereafter would constitute a conversion.    *Merrifield* v. *Baker,* 9 Allen, 29.    *Tracy* v. *Lincoln, supra. Stevens* v. *Wiley, supra,* at page 407.    The defendant's motion for a directed verdict and its request for an instruction that upon all the evidence the plaintiff could not recover were rightly denied.

There was no error in the refusal of the defendant's other requests.    The third was given in substance; the second and fifth assumed, in the absence of an agreement that the note should operate as a payment, the original debt continued notwithstanding the renewal notes.    No such agreement was required in order to discharge it; that result could have been found from the facts hereinbefore recited.    These requests wholly disregarded this aspect of the case.    For the reasons already stated, the fourth could not be given as matter of law.    The sixth assumed that the bank book remained as security for the original debt, notwithstanding what had happened; so far as proper it was given with substantial correctness.

The judge submitted to the jury two questions relating to the bank book.    The first of these required the jury to determine its value "purely as pieces of paper bound into a book" with interest from the time of conversion.    The other required the ascertain-

ment of the value of the deposit represented by the book with interest at six per cent per annum from that time. The jury answered that the value of the book as such was $.15 and that the value of the deposit with interest was $1,662.97. Having found that the book had been converted, they were directed to bring in a verdict for the plaintiff and to assess damages in the smaller sum; this was done. The plaintiff excepted to the direction of a verdict for this amount instead of that which represented the amount on deposit with interest. The book remains with the defendant and the amount represented thereby is still in the possession of the savings bank and held by it in accordance with the terms of its contract with the plaintiff.

The by-laws of the savings bank provide that no person shall receive any part of his deposit either principal or interest, without producing the original book and that the bank will not be responsible for loss sustained where the depositor has not given notice of the loss of his book if it is paid wholly or in part on presentation. By receiving the book the plaintiff had also agreed to be bound by the by-laws and regulations of the bank. Notwithstanding these provisions, under the finding of the jury the qualified right of the defendant to receive the amount had terminated and the plaintiff was legally entitled to it. The mere conversion by the defendant of the book evidencing the plaintiff's title did not deprive him of his right to the credit represented thereby. The defeasible right acquired by the pledge was divested by its termination and when so ended the original owner's title was not as matter of law conditional on his possession of the bank book.

No question is involved as to the effect of payment to a person not in fact entitled thereto but made in accordance with authority conferred by a contract between the savings bank and its depositor. For this reason cases like *Levy* v. *Franklin Savings Bank,* 117 Mass. 448, *Goldrick* v. *Bristol County Savings Bank,* 123 Mass. 320, and *Donlan* v. *Provident Institution for Savings,* 127 Mass. 183, do not aid the plaintiff.

The legal status of a savings bank book in this Commonwealth has frequently been considered. The decisions were fully reviewed in *J. S. Lang Engineering Co.* v. *Commonwealth,* 231 Mass. 367. It is well settled that a gift, pledge, or sale of a bank book with

or without a technical assignment of the debt evidenced thereby vests a title not only in the book, but in the amount in the bank which is enforceable in equity, and that for the purposes of taxation the book is a security. *J. S. Lang Engineering Co.* v. *Commonwealth, supra. Kimball* v. *Leland,* 110 Mass. 325. *Davis* v. *Ney,* 125 Mass. 590. *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425. *Taft* v. *Bowker,* 132 Mass. 277. It follows that, like a bill of exchange or note, it is for many purposes a chattel, *McCann* v. *Randall,* 147 Mass. 81, 94; and is not merely an evidence of debt but is representative of it. *Slade* v. *Mutrie, supra.*

The question of the measure of damages for its conversion is not free from difficulty, and has not been decided in this Commonwealth. In trover recovery is ordinarily for the value of the property. We see no sufficient reason to adopt a different rule in this case. As the sale of a savings bank book entitles the vendee to the amount represented by it, so we think that a conversion enables the person deprived thereof to elect to hold one who wrongfully assumes dominion to the full responsibility for his act, and therefore renders him liable for the value of the book, considering it as somewhat analogous to a negotiable instrument, a share of stock or policy of life insurance. *Wegner* v. *Second Ward Savings Bank,* 76 Wis. 242. *Sturges* v. *Keith,* 57 Ill. 451. *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626. See *Miller* v. *Hyde,* 161 Mass. 472; *Rogers* v. *Barnes,* 169 Mass. 179, 185. The plaintiff was entitled to the possession of the book and to receive the amount represented thereby. The defendant's conversion not only deprived him of the book but made it impossible for him to withdraw his deposit in the usual manner.

Upon the answers of the jury the plaintiff was entitled to a verdict in the larger amount and judgment is now to be entered accordingly. G. L. c. 231, § 124. *Morgan* v. *Murdough,* 216 Mass. 502, 505. *Zink* v. *Foss,* 221 Mass. 73. *Matthews* v. *New York Central & Hudson River Railroad,* 231 Mass. 10, 19.

The defendant's exceptions are overruled. The plaintiff's exceptions are sustained and judgment is to be entered for the plaintiff as required by the answer of the jury determining the value of the deposit as such.

*So ordered.*