COMMISSIONER OF BANKS, petitioner, *in re* COSMOPOLITAN
TRUST COMPANY.

Suffolk.    March 26, 1923. — May 26, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & CARROLL, JJ.

*Trust Company*, Savings department, In liquidation.    *Bills and Notes*, Payment, Renewal.    *Payment*.    *Evidence*, Presumptions and burden of proof.

Upon a petition by the commissioner of banks in possession of property and business of an insolvent trust company having a commercial and a savings department, for authority to transfer from the savings department to the commercial department certain notes illegally transferred from the commercial department to the savings department and to transfer from the commercial department to the savings department the amount taken from the savings department for such notes, it appeared that, after the notes had been transferred to the savings department and had fallen due, renewal notes were given in their place.    A master found that in case of such renewals the original note was treated as if it had been paid in cash and corresponding entries were made on the books of the company; that there was no intention of the officers of the savings department or of the makers that the debts evidenced by the notes when transferred from the commercial department to the savings department should be extinguished by the giving and acceptance of the renewal notes, or that the renewal notes constituted new debts or new transactions or anything more than a postponement of the time of payment of the debt evidenced by the renewal notes and an avoidance of the appearance of carrying overdue notes among the assets. This finding as to intention the master stated was " not based upon any direct evidence from trust company officer or from any borrower as to such intention."    On a report by a single justice for determination by the full court, it was *held*, that

(1) The subsequent renewals in the savings department of the notes illegally transferred to that department from the commercial department were illegal;

(2) The presumption that the giving of a negotiable promissory note discharges a preëxisting debt, even if applicable in the circumstances to affect the status of the original notes as between the parties thereto, was merely a presumption of fact and was not conclusive; and the finding by the master that there was no intention that the renewal notes should extinguish the original indebtedness was in effect a finding that the original debt was not extinguished, and overcame such presumption;

(3) Such finding by the master could be made on all the facts and inferences to be drawn from them, including the evidence regarding the course of business and the purpose of the transfers, although there was no direct evidence as to such intention;

(4) The principle that one seeking a rescission must restore what he has received is not applicable to these proceedings;

(5) A decree was ordered directing the transfers sought.

Petition, filed in the Supreme Judicial Court for the county of Suffolk on April 6, 1922, by the commissioner of banks in possession of the property and business of the Cosmopolitan Trust Company for a decree authorizing him to return to the commercial department of the trust company certain notes alleged to have been transferred unlawfully from its commercial department to its savings department and to transfer from the commercial department to the savings department the sum of $1,342,165.50, paid from the savings department for such notes.

Answers were filed by various depositors in and creditors of the commercial department.

The case was referred to a master. Material findings by the master are described in the opinion. The petition was heard by *Braley*, J., upon the master's report, the exceptions of certain respondents thereto, and the question of a final decree. The single justice reported the case to the full court for determination, stating, " I was of opinion that the exceptions should be overruled and the report confirmed. It was undisputed that the final decree should be a money decree. The gross amount claimed by the petitioner, the items of which are shown in the master's report, is $1,342,165.50; from which he concedes there should be deducted $28,000, as shown in the master's report, and the further sum of $16,736.50, being amounts received which should be credited since the filing of the bill leaving a final balance of $1,297,429. The respondents, however, being certain depositors in the commercial department who have duly proved their claims, contend that there should be a further deduction of $683,152.22, being the amount of certain renewal notes as shown in the master's report. I declined to allow this deduction and ordered a decree to be entered directing the commissioner to transfer from the commercial department to the savings department the sum of $1,297,429. These were all the questions raised before me."

*S. M. Child,* (*E. O'Callaghan* with him,) for the petitioner.

*H. Williams, Jr.,* for the Old Corner Book Store, Inc., a depositor in the commercial department.

*M. M. Horblit,* (*J. S. Stone* with him,) for other depositors in the commercial department.

CARROLL, J.   This petition is brought by the commissioner of banks, who on September 25, 1920, took possession of the Cosmopolitan Trust Company (an insolvent Massachusetts company doing business in Boston and having a commercial and a savings department) to transfer from the commercial department to the savings department money which had been illegally taken from the latter and paid to the former.   The commissioner found in the savings department a large number of notes, which had been discounted by the commercial department and sold to the savings department.   He asked that $1,297,429 of the amount paid for these notes be transferred to the savings department.   The master to whom the case was referred, found that the notes were discounted in the commercial department and full face value was paid for them by the savings department, in cash or its equivalent, and, if the transactions are allowed to stand, a substantial loss will result to the savings department.   In each case where notes of corporations or individuals borrowing on personal security, as stated in the petition, were transferred to the savings, department, the loans of the savings department on personal securities at that time exceeded one third of the deposits and income of the savings department.   G. L. c. 168, § 54, cl. 9.   It was found that no copy of a report of an examination of the affairs, assets and liabilities of the borrowing corporations mentioned in the petition, was ever delivered to the trust company, and that no examination of the affairs, assets and liabilities of these corporations was ever made at the request or on behalf of the trust company, as required by G. L. c. 168, § 54, cl. 9 (b).

Some of the notes had no indorser, surety or collateral security.   Subsequent to the transfer to the savings department, certain notes were renewed in that department, and the principal question in the case is whether the sum of

$683,152.22, paid by the savings department for the purchase of these renewal notes, should be transferred to that department. The practice of the savings department was: "A note in which were invested funds of the savings department was given a number and placed in an envelope correspondingly numbered. When such note was paid in cash the note was stamped ' Paid ' and surrendered to the maker, and the envelope or cover of the note was stamped ' Paid.' Entries were, of course, made in the books of the savings department to the effect that the note was paid. Precisely the same steps were taken in regard to a note which was not paid in cash, but for which a renewal note was substituted, with the additional step that the renewal note was given a new number and placed in another envelope correspondingly numbered. Upon the envelope or cover of the original note there would be made no entry to indicate whether the original note was ' paid ' in cash or by a renewal note; it would be stamped ' Paid ' in either case."

The business of the commercial department and that of the savings department of the trust company were carried on in the same banking rooms. " The executive officers of the trust company had the management of the business and affairs of both departments. The savings department had its own manager (sometimes a titular officer of the trust company) and subordinate employees acting under the general direction of the executive officers. The various department heads were, or felt themselves to be, directly responsible to the president of the trust company. So far as concerns the transactions because of which relief is asked in the petition, every one of those transactions was entered into pursuant to an order or direction of the president." The master further found, that " there was no intention upon the part of the officers of the savings department or upon the part of the makers of the renewed notes that debts evidenced by notes transferred from the commerical department should be extinguished by the giving and acceptance of renewal notes, or that the renewal notes constituted new debts, or that the transaction of renewing a note should constitute a new transaction between the savings depart-

ment and the individual borrower, or that the giving of a
renewal note was anything more than a postponement of
the time of payment of the debt evidenced by the renewed
note; and that the renewal of time notes at maturity, if
they were not then paid, was in accordance with the practice
of the savings department — to obtain renewals of time
notes at maturity, if not then paid and if still retained in
the savings department, in order that it should not appear
to be carrying overdue notes among its assets.   The above
finding as to ' intention ' is not based upon any direct evi-
dence from trust company officer or from any borrower as
to such intention."   It was also found that in every instance
where notes were transferred from the commercial depart-
ment to the savings department, the transfer was by direc-
tion of the president of the trust company.   " The savings
department was treated as a ' feeder ' of the commercial
department. . . . A general course of dealing thus made
apparent made it evident that notes were transferred to the
savings department rather for the purpose of obtaining funds
for use in the commercial department than with the object
of providing the savings department with investments of
its funds. . . . Quite a number of the notes mentioned in
the petition were transferred to the savings department in
so short a time after their discount by the commercial de-
partment as to lead to the inference that it was intended
that the makers of the notes should obtain savings depart-
ment funds."

In *Commissioner of Banks, petitioner, in re Prudential
Trust Co.* 240 Mass. 478, it was decided that notes and other
securities handed over from the commercial department to
the savings department should be returned by the latter
and the sum of money paid from the savings department for
these securities should be transferred from the commercial
department to the savings department.   It was said at
page 483 of the opinion, in speaking of the provisions of
the statute: " These provisions of statute manifest a legis-
lative purpose to place savings departments of trust com-
panies as nearly as possible on the same footing of security
as savings banks, and to overcome so far as practicable

the risk arising from the temptation to officers of embarrassed trust companies to help out any weakness in the commercial department by resort to the more conservative and secure assets of the savings departments. These provisions, having regard to the ends sought to be attained, must be treated as mandatory and not merely as directory. They would fall short of accomplishing their purpose if they are held merely as binding upon the conscience of officers of trust companies. These provisions have the further effect of requiring the restoration to the savings department of the equivalent of any withdrawals, swapping of investments or other transactions between it and the commercial department made contrary to the statutes to the harm of the savings department and for the apparent or supposed advantage of the commercial department. Deposits in the savings department of trust companies are presumed to be made upon the faith of the statutes for their protection. This faith must be kept in the performance as well as in the word of the law. The trust company is·a single legal entity. Its departments are established by the statute, but nevertheless it is one corporation." And again, at page 484: " But it was not the design of the General Court that the conflicting interests of the two classes of depositors under the circumstances here disclosed should be worked out on the theory of tracing trust funds. That would render illusory to a large extent the safeguards apparently held.out by the statute for the protection of the depositor in the savings department." The withdrawals of the deposits in the savings department to pay the commercial department for the notes transferred were illegal. *Commissioner of Banks in re Prudential Trust Co. supra. Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254, 259. *Commissioner of Banks, petitioner, in re Hanover Trust Co.* 242 Mass. 343.

The subsequent renewals of the notes in .the savings department were illegal, and the funds of this department could not be used to help out the commercial department. The depositors in the savings department could not be deprived of their funds by the mismanagement of the officers

of the trust company.    The rule established in *Commissioner of Banks, petitioner, in re Prudential Trust Co.* and *Commissioner of Banks* v. *Cosmopolitan Trust Co.* is decisive of the case at bar.    The funds taken from the savings department to pay the notes given in renewals of the notes originally in the commercial department, should be returned. The fact that the notes were renewed in the savings department did not as matter of law amount to a payment and extinguishment of the original indebtedness.    The finding of the master on this question cannot be disturbed.

Even if the well established presumption that the giving of a negotiable promissory note discharges a preëxisting debt between the parties upon which it is founded, is applicable in the liquidation of a trust company, to the renewal of notes by the savings department, when the original transaction was with the commercial department of the same trust company, which we do not decide, this presumption is not conclusive.    It is a question of fact whether the original debt is discharged.    The authorities on this question were collected in the recent case of *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, and it was there said, at page 74: " the question whether the indebtedness continued was one of fact.    The effect of the surrender of the matured notes to the maker upon their renewal and of the method in which the account was kept by the trust company was for the jury in connection with the other facts."    The finding of the master, that there was no intention by the officers of the savings department or by the maker of the notes that the debt to the commercial department should be extinguished by accepting the renewal notes, while not based on direct evidence amounted to a finding that the original debt was not extinguished.    Such a finding could be made on all the facts and inferences to be drawn from them, including the evidence regarding the course of business and the purpose of the transfers, although there was no direct evidence as to such intention.    Even if the collaterals exchanged were reduced or of fluctuating value, or consisted of maturing accounts receivable, as was the case with some of the renewals, it was still open to the master to find as a fact that

the original debt remained unpaid. The principle that one seeking a rescission must restore what he has received is not applicable to these proceedings. We have not thought it necessary to review the decisions cited by the commercial depositors. The case at bar is governed in all respects by *Commissioner of Banks* v. *Cosmopolitan Trust Co. supra.* The exceptions were overruled properly.

A decree is to be entered directing the commissioner of banks to transfer from the commercial department of the Cosmopolitan Trust Company to the savings department of the same, the sum of $1,297,429.

*So ordered.*