AGAWAM NATIONAL BANK *vs.* EDWARD B. DOWNING.

Hampden.    September 28, 1897. — October 20, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Accommodation Note — Bona Fide Holder for Value — Delay in enforcing Payment — Collateral Security.*

Where there is nothing to show that it was known to a bank that the note of A. payable to the order of B. was an accommodation note, or that the bank took the note otherwise than in good faith and for value, in an action on the note by the bank against A., the question whether another note, given after the maturity of the first note, by B., which included the amount of the first note and of another note given by C., which was also overdue and which had been discounted by the bank for B., operated as a payment of the first note, is one of fact, depending upon the intention of the parties and the other circumstances surrounding the transaction; and the finding of the judge, by whom the case was tried without a jury, that it did not operate as payment, is conclusive. Delay by the bank to enforce payment, if not for six years, will not release A.; and the case is not altered because the delay was at the request of the indorser B., and accompanied by an agreement between him and the bank that C.'s overdue note should be regarded as security for the new note given by B.

CONTRACT upon a promissory note, of which the following is a copy :

" $250.    Enfield, April 14, 1890.    Four months after date I promise to pay to the order of Wm. B. Downing two hundred and fifty dollars at the Agawam National Bank, Springfield. For value received.    E. B. Downing."

Indorsed, Wm. B. Downing.

Trial in the Superior Court, without a jury, before *Wardwell*, J., who allowed a bill of exceptions, in substance as follows.

The cashier of the plaintiff bank testified that the note was discounted as an original transaction on April 14, 1890, for William B. Downing, who brought it there; that it had been held in the bank continuously ever since ; that not being paid at maturity, William B. Downing was notified ; that it had lain in the past-due files until September 27, 1890, when William B. Downing gave his note for $450, which included the amount of the note in question, and another note of $200 given by William H. Downing, which was also in the same condition, overdue, and

had been discounted for William B. Downing; that the bank retained said overdue note of William H. Downing; that the new note of $450 was renewed from time to time, and occasionally reduced by William B. Downing until October 2, 1895, when it was renewed for four months for the sum of $175, which has never been paid, and was the amount now due the bank; that at the time of the last renewal, on October 2, 1895, the bank delivered up to William B. Downing the aforesaid old note of William H. Downing; that no indorsements of partial payments were made on the original note of Edward B. Downing, now in suit; that that note was held as collateral for the debt of William B. Downing; that he did not consider that he had authority to make an indorsement on this collateral note; and, in answer to a question by the judge, stated that the note in suit was considered as collateral for the $175 due from William B. Downing.

The cashier mailed to the defendant's attorneys a letter, dated March 12, 1896, which stated that " the note of E. B. Downing, $250, was given April 14th, 1890, indorsed by W. B. Downing and discounted by us at that time. It was taken up by W. B. D. with this note and the E. B. D. note left as collateral in connection with other matters, and W. B. D. has reduced his note to $175, which we now hold. W. B. D. told us when we renewed the last time that the E. B. D. note was good, and that his note would probably be paid when due. You will see that the E. B. D. note will soon be outlawed, so we must have something done."

The cashier testified that he meant that the $450 note included some other debt than that which Edward B. Downing's note covered, namely, the debt of $200 on the William H. Downing note, and that they did not carry the $250 note in suit in their account of receivables, but held it only as collateral, and at each renewal between April 14, 1890, and the date of the last renewal, the new note was entered in the account of bills receivable as the property of the bank; that the balance claimed of $175 was all that was left of the amount of the two notes originally discounted for W. B. Downing: one of $250, the E. B. Downing note in suit, and the other of $200, the W. H. Downing note; that by the expression in the letter, " It was taken up by W. B.

Downing," he meant that it was taken out of the past-due files; that W. B. Downing never had it in his hands; and that he meant that the note was transferred from the regular discount list to the collateral.

It appeared that Edward B. Downing never did any business with the bank, and that the bank never communicated with him about the condition of this note from the time that it was originally taken; and it was agreed that Edward B. and William H. were sons of William B. Downing.

Edward B. Downing testified that at the time when the note was given he was living in his own home and not with his father; that he was not indebted to his father; that his father came to his house, bringing the note, and said that he had got some money to make out; that he could turn his railroad sleepers and lumber into money within a few months; that he wished the son would help him by signing the note; that the defendant looked at the note, knowing that his father was so situated that he could turn the money within the time stated; that his father stated plainly that he would take care of the note at the end of four months; that he never authorized the use of the note as collateral to other notes; and that he did not know until after his father's death, which occurred soon after the last renewal of October 2, 1895, that the bank made any claim to hold him on the note in suit.

In rebuttal, the cashier testified that the bank never had any information that the note in suit was an accommodation note, and that it was discounted as a business note.

The defendant asked the judge to rule that, on all the evidence, the findings must be for the defendant.

The defendant asked the judge to find, on the evidence, that the note in suit was given for the accommodation of W. B. Downing, and that the defendant was not, as between himself and W. B. Downing, indebted thereon; that the only authority which E. B. Downing gave W. B. Downing was that he might get the note discounted; that W. B. Downing had no authority to use this note as collateral security; that the plaintiff bank, since the time the $450 note was given, had only claimed to hold this note as collateral for other notes of William B. Downing given by him on time with discount paid in advance; that for more than four years before William B. Downing died, on November 15, 1895,

the plaintiff bank had treated this note as William B. Downing's collateral to notes on time and renewed from time to time ; that the new note of $450, given after the note in suit was due, was intended as payment of the note in suit, and that thereafter the plaintiff bank and William B. Downing treated the note in suit as collateral only ; that the plaintiff bank only held the note in suit subject to the equities between the defendant and his father, W. B. Downing, and that E. B. Downing was not at any time indebted thereon.

The judge did not rule in accordance with the defendant's prayer, but found that no new contract or agreement was made by the bank with W. B. Downing concerning the note in suit, and, at the defendant's request, found that the note was at its inception given for the accommodation of W. B. Downing, but did not make the other findings requested, and found for the plaintiff in the amount of $183.04, being the whole amount claimed by the plaintiff as due upon the note in suit, the same also being the amount of the note of W. B. Downing, dated October 2, 1895, for which the plaintiff held the note in suit as collateral.

The following is a copy of the note of October 2, 1895:

"$175.   Springfield, Mass., October 2, 1895.   Four months after date, for value received, I promise to pay to the order of Agawam National Bank one hundred seventy-five dollars.   Payable at the Agawam National Bank.   Wm. B. Downing."

The defendant alleged exceptions.

*J. C. Hammond & H. P. Field,* for the defendant.

*F. H. Gillett & W. W. McClench,* for the plaintiff.

Morton, J.   The defendant is the maker of the note in suit. As between him and William B. Downing, the indorser, it was an accommodation note.   But there is nothing to show that this was known to the plaintiff, or that it took the note otherwise than in good faith and for value.   Whether the $450 note operated as payment of it was a question of fact, depending on the intention of the parties and the other circumstances surrounding the transaction. *Woods* v. *Woods,* 127 Mass. 141. *Brigham* v. *Lally,* 130 Mass. 485. *Dodge* v. *Emerson,* 131 Mass. 467. *Green* v. *Russell,* 132 Mass. 536. *Eames* v. *Cushman,* 135 Mass. 573. *Cotton* v. *Atlas National Bank,* 145 Mass. 43, 45.

· The court must have found that it did not, and its finding is conclusive. *Brigham* v. *Lally, ubi supra.*

There was nothing, we think, in the arrangement between the plaintiff and William B. Downing that operated to release the defendant. His liability to the plaintiff was an absolute one. Delay on its part to enforce payment, from whatever motive or however long continued, if not for six years, would not release him. We do not see that the case is altered because the delay was at the request of the indorser, and accompanied by an agreement between the plaintiff and him that the defendant's overdue note should be regarded as security for the new note given by William B. Downing.                    *Exceptions overruled.*