ARTHUR M. DOW & another *vs.* CHARLES W. POORE.

Essex.    May 15, 1930. — July 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Bills and Notes,* Consideration, As payment, Renewal note.  *Payment.*
*Mortgage,* Of real estate.  *Equity Jurisdiction,* To enjoin foreclosure
of mortgage.  *Evidence,* Presumptions and burden of proof, Of pay-
ment.

In a suit in equity by an owner of land to have a mortgage thereon can-
celled on the ground of fraud, or, if the mortgage were valid, to have
the amount of the mortgage debt ascertained, a master found that
there was no fraud practised upon the mortgagor by the mortgagee;
that, about twenty-five years previous to the giving of the mortgage,
the mortgagor had incurred indebtedness to the mortgagee and had
given a note to him for the amount thereof with interest; that the
mortgagor thereafter was unable to pay the note; that about every
five years he executed an interest bearing negotiable renewal note
for the same amount and the mortgagee surrendered the preceding
note; that, although no interest on any of the notes ever was paid or
demanded by the mortgagee, the mortgagee always had considered
the interest as a valid obligation owed to him, but had refrained from
asserting his claim therefor out of consideration for the mortgagor;
that the mortgagor several times had stated to the mortgagee that
he was anxious to pay all that he owed and would have done so had
he been able; that the note secured by the mortgage was the last
renewal note, bore interest, and was for the amount of the original note
plus the accumulated interest thereon; and that the mortgagor under-
stood what the mortgage note represented and intended that it should
include interest.  The plaintiff contended that the mortgage note
could not properly be enforced for a sum greater than the amount of
the original note plus the interest due on the last previous renewal
note.  A decree was entered adjudging that the sum due was the face
of the mortgage note with interest.  *Held,* that

  (1) The mortgage was available only to secure the payment of such
sums as should be due the mortgagee in equity and in good conscience
under recognized rules of law;

  (2) The circumstance, that some of the debt arising by way of
interest was outlawed by the statute of limitations was immaterial in
view of the mortgagor's express promise in writing to pay;

  (3) The presumption, that the giving of a negotiable note is a dis-
charge and extinguishment of a previous indebtedness between the
parties on which it is founded, was rebuttable: whether the giving of
each renewal note in the circumstances above described was a dis-

charge of the preceding note was a question of fact depending on the intention of the parties;

(4) A conclusion was warranted that neither the mortgagor nor the mortgagee intended that the obligation to pay interest was abandoned, or that it should be affected in any respect, by the giving and acceptance of the renewal notes;

(5) The decree was proper and was affirmed.

BILL IN EQUITY, filed in the Superior Court on July 18, 1929, and described in the opinion.

The suit was referred to a master, material facts found by whom are stated in the opinion. By order of *F. T. Hammond*, J., there were entered an interlocutory decree confirming the master's report and a final decree adjudging that the plaintiffs owed the defendant $1,269.83 and ordering that, if the plaintiffs paid that sum with interest within thirty days, the defendant should discharge the mortgage; otherwise the bill should be dismissed. The plaintiffs appealed from the final decree.

*P. I. Lawton*, for the plaintiffs.

*E. Foss*, for the defendant.

CROSBY, J. This is a bill in equity brought by the owners of a parcel of land, situated in Salisbury in this Commonwealth, to restrain the defendant from foreclosing a mortgage and to have the mortgage cancelled on the ground of fraud, or, if the mortgage be held to be valid, to ascertain the amount of the mortgage debt.

The bill alleges that the plaintiffs are the owners of the land in question, having derived title through one Elvira True; that the defendant claims to hold a mortgage on the premises for $1,000, given him by said Elvira True on August 13, 1925, and is about to foreclose the same; that at the time of the giving of the mortgage Mrs. True was incapacitated by reason of age, illness and impaired mentality, and was induced to make the conveyance through the fraud, duress and undue influence of the defendant. The bill also alleges that the mortgage was given without consideration and that no part of the alleged debt has been paid.

The case was referred to a master who made the following findings: The defendant from 1889 to 1896 was a retail

grocer in Newburyport and supplied groceries in Salisbury at the house of Mrs. True, who was the grandmother of the plaintiffs, and the mother-in-law of the defendant. In 1893 or 1894 the defendant, at the request of Mrs. True, expended money for labor and materials in the repair of her premises amounting to about $492, and the grocery bill amounted to about $475. By a deed dated September 5, 1890, Mrs. True conveyed her interest in certain property in Newburyport to the defendant for the consideration of $466.66, but no payment was then made by the defendant.

About 1898 or 1899 the parties had a settlement. The amount due from the defendant for the conveyance of Mrs. True's interest in the Newburyport property was credited on his bill for groceries and repairs and a note for $500 evidencing the balance was executed by Mrs. True and given to the defendant. The note was negotiable in form and bore interest but no maturity date. About every five years thereafter a renewal note was executed by Mrs. True and the old note was surrendered. No interest was ever paid on any of the notes or called for by the defendant, although each was in the sum of $500 with interest. In 1893 or 1894 Mrs. True spoke to him about his bill and asked him what she should do about it, and he told her "to let it go" for the time being.

The master further found that the only resources of Mrs. True were the produce of the property on which she lived, and that at no time did she have sufficient funds to pay her indebtedness without mortgaging the property. When the last of the renewal notes prior to the one in suit was given she expressed regret at her inability to pay it. In June or July, 1924, the defendant informed her that the note would be due in about a year and he felt that she should do something with it; that on the next renewal he would draw up a different form and include some of the interest. To this she replied that she wanted him to have all that was coming to him and wished she could have paid him before. On August 13, 1925, the defendant and his son went to Mrs. True's home and there she executed the note and mortgage in question. The mortgage was for the sum of $1,000 with

interest at six per cent, and was payable "In or within one year." This note was given in consideration of the outstanding $500 note and accumulated interest on the obligation from the time of its creation in the form of the original note given in 1898 or 1899. The master found that no fraud or undue influence was exercised by the defendant in procuring the execution of the note and mortgage; that although she was eighty-eight or eighty-nine years of age and for several months prior to the execution of the mortgage she had suffered from serious bodily ailments, and her vision was impaired, "she was, nevertheless, competent to understand and did understand the nature of the note and mortgage which she executed and acknowledged." A hearing was had upon the master's report by a judge of the Superior Court, and an interlocutory decree was entered confirming the report. A final decree was entered adjudging that there was due to the defendant upon the mortgage note the sum of $1,000 with interest. Other provisions in the final decree need not be here recited. The case is before this court on an appeal from the final decree.

It is the contention of the plaintiffs that the only valid consideration for the mortgage note was the obligation of Mrs. True arising out of the $500 note executed by her in 1919 or 1920; that when each note in the series was executed by Mrs. True it was presumed to be taken in payment of the then preëxisting indebtedness on the preceding note; that there was a partial failure of consideration for the $1,000 note to the extent of $350, this sum representing the difference between $1,000 and $500 plus interest on the note given in 1919 or 1920.

It is plain that the defendant's mortgage was available only to secure the payment of such sums as should be due him in equity and in good conscience under recognized rules of law. *Saunders* v. *Dunn*, 175 Mass. 164. Hence, to the extent, if any, to which there was a failure of consideration, the defendant could not recover on the note or enforce the claim against the security. G. L. c. 107, § 51. *Parish* v. *Stone*, 14 Pick. 198. *Earle* v. *Reed*, 10 Met. 387. *Aikey* v. *Gardner*, 243 Mass. 77, 84, 85. But unless the

acceptance of the renewal notes operated as a discharge of the obligation in the 1898 or 1899 note to pay interest, it is obvious that the mortgage note was supported by a full and valuable consideration.

The fact that some of the debt arising by way of interest was outlawed by the statute of limitations is immaterial in view of the mortgagor's express promise in writing to pay. *Chace* v. *Trafford,* 116 Mass. 529. *Custy* v. *Donlan,* 159 Mass. 245. *Clark* v. *Jones,* 233 Mass. 591. Whether the renewal notes effected payment of the first and succeeding notes depended on the intention of the parties and the other circumstances attending the transaction. *Fowler* v. *Bush,* 21 Pick. 230. *Taft* v. *Boyd,* 13 Allen, 84. *Dodge* v. *Emerson,* 131 Mass. 467. *Eames* v. *Cushman,* 135 Mass. 573. *Agawam National Bank* v. *Downing,* 169 Mass. 297, and cases cited.

"The long established presumption here existing is that the giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded. While that presumption is rebutted where it appears that thereby the security held for the original debt will be released, nevertheless it is ordinarily a question of fact whether such a result follows." *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73. *Curtis* v. *Hubbard,* 9 Met. 322, 328. *Brewer Lumber Co.* v. *Boston & Albany Railroad,* 179 Mass. 228. *Paddock & Fowler Co.* v. *Simmons,* 186 Mass. 152, 153. *Brown* v. *Bishop,* 225 Mass. 276. Upon the facts found by the master and the reasonable inferences to be drawn therefrom, the conclusion is justified that neither the defendant nor Mrs. True intended that the obligation to pay interest was abandoned, or should be affected in any respect, by the giving and acceptance of the renewal notes. It is apparent from the statements made by her in 1893 or 1894, in 1919 or 1920, and in 1924 and 1925 that at all times she was anxious to pay the defendant what she owed him, and would have done so if she had been able. When the mortgage note was given she understood that it was for an amount largely in excess of previous notes, but intended that it should

include interest on the indebtedness she had owed the defendant for many years. In a conversation a year before the note in question was given she told the defendant that she wanted him to have all that was coming to him and wished that she could have paid him before. As to the intention of the defendant, it appears, from statements made by him which could have been given credence by the master, that up to the time of receiving the mortgage note he looked upon the interest as an existing valid obligation and refrained from asserting his claim at an earlier date out of consideration for an aged relative in straitened financial circumstances.

Although if a negotiable promissory note is given for a preëxisting debt it is presumed that the creditor intended to receive it in payment of such debt, this presumption may be rebutted and controlled; "and the fact that such presumption would deprive the creditor taking the note of the substantial benefit of some security, such as a mortgage, guaranty, or the like, has been held to be sufficient evidence to meet and repel the presumption." *Lovell* v. *Williams*, 125 Mass. 439, 441, 442. *Cary Brick Co.* v. *Wheeler*, 210 Mass. 338, 340.

As the plaintiffs have not argued that the master's finding, that the execution of the mortgage note was free from fraud or duress, was unwarranted, that question is treated as waived.

The master has found that the notes were not understood by the parties to be taken in satisfaction of the obligation to pay interest; they therefore cannot be given that effect. It follows that the final decree must be affirmed.

*Ordered accordingly.*