GILBERT ROSEN & another vs. AARON SHAPIRO & others.

Suffolk.    May 21, 26, 1930. — July 2, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Payment. *Payment. Mortgage,* Of real estate: discharge.
*Sale of Merchandise in Bulk.*

A promissory note indorsed before delivery was secured by a second
mortgage which contained a provision allowing the substitution of a
new first mortgage in place of the first mortgage then outstanding. The
payee forthwith assigned the second mortgage and indorsed the note.
Subsequently, when certain payments had been made thereon by the
maker, he, desiring to substitute a new first mortgage, executed to
the order of and delivered to the same payee another note for the
balance due on the first note. The second note did not bear any
indorsement. It thereupon was indorsed by the payee to the in-
dorsee of the first note, who executed and recorded an instrument
reciting that he acknowledged "satisfaction" of the second mortgage.
The first note was not delivered to the maker, but subsequently came
into the hands of the payee, who thereafter sought in a suit in equity
to establish the liability of the maker and indorser thereof for an
unpaid balance. There was evidence that the indorsee, when the
maker applied for leave to substitute mortgages, told him that he
would allow it provided the maker would again secure the payee's
signature; and that the payee and indorsee gave the new first mort-
gagee to understand that the first note would be given up. Although
the defendant indorser knew of the substitution of mortgages, there
was no evidence that he was asked to indorse the second note, or that
he did anything to indicate that he intended to incur a new liability
or recognized his old liability, or that he was notified by anyone that
rights against him on the first note were reserved. The trial judge
found that the defendant indorser was not liable and a decree was
entered dismissing the bill as against him. *Held,* that

(1) If the second note were given in payment of the balance due
on the first note, the first note was extinguished and all claim thereon
against the defendant indorser came to an end;

(2) Although the substitution of mortgages did not necessarily ef-
fect an extinguishment of the first note, findings were warranted in
the circumstances that the indorsee intended to look to the payee's
indorsement only as security in addition to the second mortgage and
that the first note was paid;

(3) There was no error in the decree.

A promissory note was indorsed by the payee. At a time when the maker
was not in default in payments thereon, he organized a corporation

and transferred to it in bulk a business formerly carried on by him. He did not give notice of the transfer under G. L. c. 106, § 1, to the payee of the note. *Held,* that

(1) The payee at the time of transfer was not a creditor of the maker entitled to notice under the statute;

(2) No violation of the statute was shown by failure to give him notice.

BILL IN EQUITY, filed in the Superior Court on June 8, 1929, having been commenced by a common law writ in trustee process dated December 8, 1928, to establish the indebtedness of the defendants Aaron and Annie Shapiro and Max Brown on the note of January 7, 1926, described in the opinion, and to reach and apply certain property in satisfaction thereof.

The suit was heard by *Burns,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found by the judge are stated in the opinion. By his order, a final decree was entered establishing the indebtedness of the defendants Aaron and Annie Shapiro in the sum of $14,435 and interest from May 1, 1928, and dismissing the bill as to the other defendants. The plaintiffs appealed.

*B. Levin,* (*A. Sigel* with him,) for the plaintiffs.

*M. B. Holsberg,* for the defendant Brown.

*J. Spiegel,* for the defendant Fuller's, Inc., submitted a brief.

WAIT, J. The plaintiff brings this bill to recover the balance due upon a loan which was secured by a mortgage that has been foreclosed. The facts material to our determination are as follows: January 7, 1926, Aaron and Annie Shapiro delivered their note indorsed by Max Brown to the plaintiff Rosen. By its terms, they promised to pay Rosen or his order $25,000 with payments on the principal of $400 monthly and the entire unpaid balance in or within three years from its date, with interest monthly at the rate of six per centum per annum. It was given for value. Brown, as indorser, waived demand and notice. It was secured by a second mortgage of land in Boston. The mortgage deed, executed by the Shapiros in the statutory

short form, contained a provision for substitution: "the purpose of this provision being to allow the substitution of a new first mortgage in place of the present first mortgage without lessening or impairing the security of this loan." Within a few days after the delivery of the note and mortgage, Rosen assigned them, for value, to one Shoolman, and indorsed the note, waiving demand and notice. Brown made no payments on the note. Aaron Shapiro made payments regularly until, in July, 1927, he requested the discharge of the mortgage to permit the substitution of a new first mortgage. The principal due on the loan had then been reduced to $17,800. On July 8, 1927, the Shapiros executed a new note payable to the order of Rosen in the principal sum of $17,800 payable $400 "in one month from date hereof and four hundred ($400.00) dollars monthly thereafter and the balance remaining unpaid on or before January 7, 1929" with interest as before. Brown was not an indorser on this note. It was immediately indorsed by Rosen, waiving demand and notice, to Shoolman, who, under date of July 1, 1927, as assignee and holder of the earlier mortgage acknowledged "satisfaction of same." This "discharge" was recorded on July 8, 1927. The note for $17,800 in its terms differed somewhat from the terms of the note for $25,000 in other respects as well as in the principal amount. It was given in substitution for the latter note, but the latter was not delivered to the Shapiros. Instead, it was held by Shoolman; and eventually came to the hands of Rosen, although Shoolman by his recorded paper of July 8, 1927, had acknowledged "satisfaction" of the mortgage. Later, Shapiro defaulted in the payments required; and, in April or May, 1928, Shoolman entered to foreclose on the mortgaged premises, and sold them under the power of sale for $1,000, the highest bid at the sale. Rosen purchased the premises from the buyer at the sale, and gave Shoolman a new mortgage for $14,200. He also paid to Shoolman the expenses of the sale and interest overdue at the time. The principal then due on the note was $15,000. Thus he paid in consequence of his indorsement, as the judge found, $14,435. He sought by his bill to recover

from the Shapiros and from Brown. The judge found and ruled that Brown was not liable; but established the debt of the Shapiros at $14,435, with interest from May 1, 1928, the date of demand by Rosen. The evidence is reported.

Whether the second note was taken in payment of the first was a question of fact, and, as there was evidence to sustain the finding that it was so taken, this court will not overturn the determination of the trial judge, who had opportunity to weigh the credibility of the witnesses by something other than a printed report of the words they used. *Donnelly* v. *Alden*, 229 Mass. 109, 114. If the $25,000 note was paid when that for $17,800, the balance then due, was given, it was extinguished. G. L. c. 107, § 142. All claim upon it against the indorser Brown was ended. He would become liable thereafter only if by some act for which he was responsible he undertook liability. He knew that the new mortgage was being substituted for the old one; but there was no evidence that he was asked to indorse again, nor that he did anything to indicate that he incurred a new liability or recognized an old one. Shoolman, the holder of the mortgage, could well be found to have looked only to Rosen's indorsement as security additional to the new mortgage. There was evidence that when Shapiro applied for the discharge of the earlier mortgage to permit the substitution of the new first mortgage, Shoolman said: "If you can get me Rosen's signature back again, I will lift the old mortgage and I will let you put in a new mortgage." No right of recourse against Brown was reserved in terms by any one. Rosen was not holder of the note when the mortgage was discharged. He could not reserve the right. The power to do it was in Shoolman, the holder. G. L. c. 107, § 143 (5).

We do not imply that the substitution of new security under the power given by a substitution clause ordinarily effects an extinguishment of the note. The note and the security stand differently. One may be affected when the other is not. If, however, as a result of what has taken place the note is, in fact, paid and thereby extinguished, then indorsers are no longer liable by virtue of their in-

dorsements. Here there was evidence that Rosen and Shoolman gave the new first mortgagee to understand that the note for $25,000 would be given up. Taken with the form of discharge, the statement of Shoolman, the absence of Brown at the time of substitution, the failure to ask his indorsement on the new note, or to notify of reservation of rights against him on the old note, we cannot say there was error in the finding that the old note was paid.

Question is also raised with reference to the dismissal of the bill as against a defendant, Fuller's, Inc. The bill alleged that the Shapiros had carried on a retail dress business in Malden; had organized Fuller's, Inc., a corporation; and, in fraud of the rights of their creditors, had transferred the business in bulk to the corporation without complying with the sales in bulk act, G. L. c. 106, § 1. It alleged participation in the fraud on the part of Fuller's, Inc.; and it sought a decree against it. The corporation was organized and the transfer was made on December 14, 1927. Failure to notify Rosen as a creditor is alleged as the lack of compliance with the sales in bulk act complained of. At that time, the Shapiros had not made default, and Rosen was not holder of note or mortgage. Without deciding whether the sales in bulk act applies to such a transfer, it is enough, for this case, to say that, manifestly, Rosen was not a creditor at the time entitled to notice under the act, and has no standing to object.

The rulings were sufficiently favorable to the plaintiff. No prejudicial error appears. The order will be

*Decree affirmed with costs.*