SAMUEL J. FREEDMAN, trustee in bankruptcy, vs. PEOPLES
NATIONAL BANK OF MARLBOROUGH.

Suffolk.    October 4, 1934. — June 24, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

Payment. Bills and Notes, Note as payment. Evidence, Presumptions
and burden of proof. Mortgage, Of real estate: foreclosure, con-
struction.

No presumption of intention to discharge a promissory note secured by
a mortgage arose where the payee accepted a note in the same amount
made by a corporation and indorsed by the maker of the old note,
marked the old note "paid," returned it to its maker and marked it
as paid on the payee's books.

In an action of tort by a mortgagor of real estate against the mortgagee
for illegal foreclosure of the mortgage, the burden was on the plain-
tiff to prove that no breach of condition existed at the time of the
foreclosure.

Misconduct on the part of a mortgagee of real estate in connection with
a sale in foreclosure of the mortgage is not shown by the mere fact
that he bid in the property for an inadequate price.

A mortgage conditioned upon the mortgagor's paying sums "owing by
me to" the mortgagee "during the continuance of this mortgage . . .
upon . . . promissory notes . . . or other forms of indebtedness"
covered liability of the mortgagor to the mortgagee arising from the
mortgagor's indorsement of notes of others, without protest thereof.

TORT.    Writ dated June 12, 1929.

The action was tried in the Superior Court before Morton,
J., who ordered a verdict for the defendant. The plaintiff
alleged exceptions. Material evidence is stated in the
opinion.

R. C. Evarts, (S. L. Kaplan with him,) for the plaintiff.

F. P. Garland, (W. Temple & J. DeCourcy with him,) for
the defendant.

RUGG, C.J.    The plaintiff is the trustee in bankruptcy
of Tremblay Lumber Co., a Massachusetts corporation.
As such trustee he brought this action of tort against the
defendant to recover damages alleged to have arisen from
the foreclosure of a mortgage on real estate owned by the

bankrupt at a time after the indebtedness intended to be secured by the mortgage had been, paid. At the close of the evidence a verdict was directed for the defendant. The evidence therefore must be considered in its aspect most favorable to the plaintiff.

The evidence of the plaintiff tended to show these facts: The real estate in question prior to 1927 had been purchased by Eugene Tremblay. He improved it as a warehouse in connection with his lumber business. · On May 23, 1927, he was indebted to the defendant as ·maker of nine promissory notes and as indorser of notes of other·. persons. He was also indebted to the defendant on a note signed by him and his wife jointly for $3,000. There was conference between the president of the defendant and Tremblay about the latter furnishing additional security for his indebtedness to the bank by giving a mortgage on his warehouse property. His aggregate indebtedness to the defendant then was in the principal sum of $32,486. A note in that sum was given under date of May 23, 1927, secured by a second mortgage on his warehouse real estate. It was a promise to pay the principal sum and also to "pay on demand such further sums of money as the said Peoples National Bank may advance to me on the security of this mortgage . . . or which may hereafter become owing by me to the said Peoples National Bank during the continuance of this mortgage, either for money loaned and advanced, or upon checks, promissory notes or renewals of such notes, or other forms of indebtedness, together with interest . . . ." Substantially the same language was contained in the condition of the mortgage on the real estate securing such collateral note. This note and the mortgage were given as collateral security for the indebtedness of Tremblay to the defendant. On June 15, 1927, Tremblay incorporated his business under the name Tremblay Lumber Co., the present bankrupt. Shortly thereafter he conveyed to the corporation the equity in the real estate subject to a first mortgage to a savings bank and to the second mortgage to the defendant already described, which the grantee assumed and agreed to pay. On June 23, 1927,

Tremblay was indebted to the bank on sixteen promissory notes in the total amount of $25,085.78. On that day notes of the corporation for the same total amount indorsed by Tremblay were given to the defendant. The defendant stamped the sixteen individual notes of Tremblay "Paid," returned them to the maker and marked them off on its books as paid. In addition, Tremblay was also indebted jointly with his wife on the note to the defendant for $3,000. On September 4, 1928, the defendant foreclosed the mortgage. There were present at the sale Mr. and Mrs. Tremblay, an attorney representing them, two or three neighbors and several officers of the defendant in addition to the auctioneer. The attorney stated that the sale was illegal and improper. The property was bid in by an agent of the bank for $50, subject to the savings bank mortgage. There was evidence that the value of the real estate at that time was greatly in excess of the amount of the mortgages. The corporation was petitioned into bankruptcy in October, 1928. The defendant proved claims against the bankrupt in the bankruptcy proceeding amounting to $23,720.17 on direct obligations and to $994.62 on indirect obligations.

It is plain that the note for $32,486 and the mortgage by which it was secured were according to their terms collateral security for the direct indebtedness of Tremblay as maker on notes to the defendant, for his indebtedness as indorser of notes made by others, and for the joint note of himself and his wife. There was no evidence that this latter note had been paid at the time of the foreclosure. The plaintiff contends that acceptance by the defendant of notes of the corporation for $25,085.78 indorsed by Tremblay in place of a like amount of notes by Tremblay as maker, and the surrender of these latter notes stamped as paid, extinguished these notes as an obligation of Tremblay. Even if that contention be accepted, it did not extinguish the $3,000 joint note of Tremblay and his wife. There was no evidence that that note was ever surrendered or extinguished. Testimony in behalf of the defendant was to the contrary. Hence the mortgage might be foreclosed. That contention

as to payment of the Tremblay notes cannot be supported, however.   On this point the case at bar is governed by *Anderson* v. *Home National Bank of Brockton*, 290 Mass. 40, 44, where it was said: "Whether a note is given and received in payment of an existing obligation or note, or is given and received in renewal or extension of an existing obligation or note, is a question of fact, in the absence of agreement of the parties to that end.   *Kendall* v. *Equitable Life Assurance Society*, 171 Mass. 568, 573.   *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73.   'It is a question of intention, and the intention to discharge the old note is presumed when a different intention is not shown by evidence or inferred from circumstances.   When it appears that it will be for the benefit of the creditor that the old debt should be kept alive, the presumption does not arise, and the debt is not discharged.   Accepting a negotiable note for a secured debt will not discharge the debt, because it will not be presumed that the creditor intended to give up his security.'   *Cotton* v. *Atlas National Bank*, 145 Mass. 43, 45.   *Rosenberg* v. *Robbins*, 289 Mass. 402, 410, 411."

There was no testimony in behalf of the plaintiff that the indebtedness secured by the mortgage had been paid in any other way than by notes of the corporation.   The burden of proof was on the plaintiff to show that there was no breach of the condition of the mortgage at the time of the foreclosure in order to prevail on this aspect of the case. That burden has not been sustained.   The testimony in behalf of the defendant is explicit to the effect that it has not been paid.   While the jury were not obliged to believe that testimony, that does not supply the defect in the proof of the plaintiff's case.   There is nothing in *Rogers* v. *Barnes*, 169 Mass. 179, at variance with what is here decided.

The plaintiff contends that he was entitled to go to the jury because of the inadequacy of the bid finally accepted at the foreclosure sale.   At the trial the plaintiff conceded "that there was no fraud at the foreclosure."   Tremblay and his wife and attorney were present at the sale.   There is nothing in the record to indicate that there was not full

compliance with the terms of the power of sale in the mortgage or that there was not adequate advertisement. Mere inadequacy of price obtained at a foreclosure sale not otherwise open to attack falls short of justifying a nullification of the foreclosure. *Learned* v. *Geer*, 139 Mass. 31. *Vahey* v. *Bigelow*, 208 Mass. 89. *McCarthy* v. *Simon*, 247 Mass. 514, 522. *Johnston* v. *Cassidy*, 279 Mass. 593, 597.

There was no error in the exclusion of inquiry whether the notes of the bankrupt indorsed by Tremblay were protested. The terms of the collateral note and mortgage covered liability arising from such indorsements without protests.

There was no error in directing a verdict for the defendant.

*Exceptions overruled.*