COMMERCE BANK & TRUST COMPANY *vs.* PAUL G. HAYECK
& another,[1] coexecutors.[2]

No. 97-P-598.

Worcester. November 6, 1998. - May 7, 1999.

Present: ARMSTRONG, GILLERMAN, & SPINA, JJ.

*Bank. Loan. Negotiable Instruments,* Note, Renewal note, Defenses. *Evidence,* Parol evidence, Extrinsic affecting writing. *Fraud. Consumer Protection Act,* Availability of remedy.

In an action on a promissory note, the judge incorrectly relied on parol evidence to conclude that the parties' agreement was other than as written, and the remaining evidence did not support the judge's findings that the defendant signed the note in reliance on misrepresentations by the plaintiff and another, or that the plaintiff had unjustifiably impaired collateral securing the note; however, the judge correctly dismissed the defendant's G. L. c. 93A counterclaim. [691-696] GILLERMAN, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on January 7, 1993.

The case was heard by *Thayer Fremont-Smith,* J.

*Lawrence S. Delaney* for the plaintiff.

*Paul G. Hayeck* for the defendants.

SPINA, J. Commerce Bank and Trust Company (Commerce) commenced suit against George N. Hayeck in the Superior Court for the balance due on a promissory note, of which Hayeck was comaker with one Edward Bryson. Following a trial without jury, a Superior Court judge found Hayeck not liable on the note because he signed it in reliance on misrepresentations by Bryson and by an officer of Commerce, and because Commerce had unjustifiably impaired collateral securing the note. See G. L. c. 106, § 3-606(1)(*b*), as in effect prior to St.

---

[1]Helen L. Hayeck.

[2]Of the estate of George N. Hayeck, who died while this appeal was pending.

1998, c. 24, § 8. Commerce appeals, claiming that the evidence does not support the judge's findings. Hayeck's coexecutors appeal the dismissal of his counterclaim for relief under G. L. c. 93A; claiming the judge erred by ruling that a negligent misrepresentation is not actionable under c. 93A.

We summarize the judge's findings, supplemented by facts from uncontroverted evidence "not in conflict with the [trial] judge's permissible findings." See *Bruno* v. *Bruno*, 384 Mass. 31, 35 (1981). In late 1991, Bryson, who was president and sole shareholder of Northeast National Mortgage Corporation (NENMCO), an approved lender for the United States Department of Housing and Urban Development (HUD), applied to Commerce for a $65,000 loan for the purpose of investing in NENMCO to meet HUD's net worth requirements. Commerce required Bryson to obtain a comaker on the note acceptable to Commerce.

Bryson approached Hayeck about being a comaker of his note. They had known one another for over thirty years, and Bryson was a commercial tenant of Hayeck's, albeit at the time in arrears in his rent. When Hayeck asked how the loan would be secured, Bryson explained that "it was going to be secured by the monies being deposited into a CD, certificate of deposit, and that he was pledging the stock in the company [NENMCO]." Believing his exposure would be minimal, Hayeck agreed to be comaker.

Commerce's loan file documents indicated that the loan proceeds would be "deposited in a certificate account at [Commerce] with custodial control held by [Commerce]. The loan proceeds will be used to meet the 'Net Worth' requirement and not for any other Corporate purposes. Stock issued to the Borrower could be pledged as security." A November 26, 1991, entry in Commerce's loan history documents indicated that "[r]epayment will come from cash flow of [NENMCO], or from a $65,000 certificate of deposit which [NENMCO] will have in our bank once the note closes. The third source of repayment is from personal assets of Bryson or Hayeck." The November 26 entry also included details about the net worth of Bryson and Hayeck, respectively. A December 5, 1991, entry in the loan history documents reiterated the November 26 entry but omitted any reference to Hayeck.

The note, dated December 2, 1991, referred to a pledge agree-

ment of the same date[3] and 5,900 shares of NENMCO stock held as collateral. There was no reference to a $65,000 certificate of deposit as collateral. The note further provided that every party "assents . . . to any substitution, exchange or release of collateral granted or permitted by the holder, and agrees that the holder may release any party hereto, expressly reserving all rights of recourse against any other parties primarily or secondarily liable" on the note. Hayeck, though sophisticated in business matters, and having prior experience in banking, did not read the note before signing, though he had the opportunity to do so. Neither did he discuss it with anyone at Commerce before signing. The judge found that Bryson led Hayeck to believe, when the note was signed, that an arrangement with Commerce was in place where "the funds would remain on deposit at [Commerce] as security for repayment of the loan" and that Hayeck reasonably relied on that representation.

The loan proceeds were released on December 11, 1991. A $65,000 check, payable to Bryson and Hayeck, was endorsed by both, and the monies were deposited to a new account at Commerce in the name of NENMCO. NENMCO had two preexisting accounts at Commerce. On January 7, 1992, Bryson withdrew $50,000 from the new account without Hayeck's knowledge.

On June 2, 1992, the note came due. Bryson asked Commerce for a six-month renewal, as NENMCO had not yet received its commission income due from HUD. Commerce agreed, and Bryson and Hayeck signed a renewal note on June 3, 1992, due December 30, 1992. Like the earlier note, the renewal note contained a reference to the pledge agreement and the NENMCO stock as collateral, but no reference to a certificate of deposit; and it contained the same provision for the substitution or release of collateral and parties. Before signing, Hayeck asked James Gennaro, senior vice-president and senior loan officer at Commerce, if the stocks and the certificate of deposit were in place, and Gennaro assured Hayeck that they

---

[3]The pledge agreement, dated December 5, 1991, refers to a promissory note bearing the same date. Hayeck testified that he signed a note around December 2, 1991, but had to return to Commerce to sign a substitute note because of some problem with the first note. The judge found that the note was signed on or about December 5, 1991. No issue is made of the discrepancy.

were. The judge found that Gennaro assured Hayeck that Commerce "*was* holding the $65,000 in a separate NENMCO account from which the note would be repaid" and that Hayeck reasonably relied on those assurances when he signed the renewal note. He did not read the renewal note before signing.

Bryson died of cancer on September 10, 1992. In November, 1992, Commerce demanded payment from Bryson's estate and Hayeck. Following discussions among the parties and no payment of the renewal note, Commerce filed suit against Hayeck alone on January 7, 1993. Commerce never took any action under the pledge agreement to apply NENMCO's funds, by exercising its voting rights in NENMCO's stock, to the loan balance, and it never brought suit against Bryson's estate to recover the loan balance. On January 22, 1993, Commerce closed the NENMCO account containing the remaining loan proceeds, $15,874.76, as well as two other NENMCO accounts containing approximately $17,082.20. The money, $32,956.96, was paid to NENMCO at the request of Bryson's widow, acting as clerk of NENMCO.

The judge found that Commerce unjustifiably impaired the collateral given as security for the loan when, contrary to its representations, it permitted a withdrawal of $50,000 from the NENMCO account containing the loan proceeds and also when it failed to take action on the pledge agreement, as noted above, to set off the $32,956.96 of NENMCO funds it held on deposit against the outstanding debt. The judge then held that Commerce's actions constituted a discharge of Hayeck as a party to the note, pursuant to G. L. c. 106, § 3-606(1)(*b*). The judge also found that first Bryson, then Gennaro, "expressly assured" Hayeck that the collateral would never be released. Having found for Hayeck on Commerce's complaint, the judge dismissed Hayeck's third-party complaint against Bryson's estate. Hayeck did not appeal from that judgment. Hayeck has appealed the dismissal of his counterclaim.

1. Commerce argues that the judge's finding that the parties agreed that the NENMCO account with the loan proceeds would remain on deposit as security for repayment of the loan is inconsistent with his finding that the notes were integrated documents and thus cannot stand. Commerce further argues that because the notes were unambiguous, they were necessarily integrated, and the judge should not have considered parol evidence to show that the agreement of the parties was other than as written.

Generally, a party appealing a judgment on the basis of inconsistent findings must, to preserve the issue for appeal, present a motion under Mass.R.Civ.P. 59(a)(2), 365 Mass. 827 (1974), to alter or amend the judgment or for a new trial. See *Biggs* v. *Densmore*, 323 Mass. 106, 108-109 (1948); *Raytheon Mfg. Co.* v. *Indemnity Ins. Co. of N. America*, 333 Mass. 746, 749 (1956). That was not done here, and the issue is deemed waived. Our inquiry does not end, however, as Commerce also challenges the sufficiency of the evidence supporting the judge's finding that the agreement of the parties was other than as expressed by the notes. Compare *National Shawmut Bank* v. *Johnson*, 317 Mass. 485, 492 (1945).

"The interpretation of an integrated agreement is a matter of law on which we are not bound by the trial judge's conclusions unless the problem of interpretation is affected by findings of fact." *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). Because the notes unequivocally provided that collateral was 5,900 shares of NENMCO under a pledge agreement dated December 2, 1991, and further that all parties assented to the right of Commerce to release any collateral or obligor, admission of evidence of any antecedent agreement varying or contradicting those terms violated the parol evidence rule. *Plasko* v. *Orser*, 373 Mass. 40, 44 (1977). *Federal Deposit Ins. Corp.* v. *Hill*, 13 Mass. App. Ct. 514, 517 (1982). It was error to find that the parties had agreed that a $65,000 certificate of deposit would be held as collateral *and remain* on deposit as security for repayment, terms other than those set forth in the notes, for purposes of enforcement.

The finding that the notes were integrated documents is supported by the lack of ambiguity in the terms of the notes, see *Plasko* v. *Orser*, *supra*, and by their apparent completeness, see *Sherman* v. *Koufman*, 349 Mass. 606, 609 (1965), and is also a finding that is not disputed. As the notes expressly provided that all parties assented to the right of Commerce to release any collateral, it was not open to Hayeck, by way of defense under G. L. c. 106, § 3-606(1)(*b*),[4] to show that Commerce unjustifiably impaired collateral given on the notes by releasing the NENMCO monies. See *Federal Deposit Ins. Corp.* v. *Hill*, 13

---

[4]General Laws c. 106, § 3-606, as in effect prior to St. 1998, c. 24, § 8, states:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (*b*) unjustifiably

Mass. App. Ct. at 518. Further, Commerce was under no obligation to apply any collateral to the debt before commencing suit against Hayeck, where the security agreement did not so require. See G. L. c. 106, § 9-501(1), (3); *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. 604, 608-609 (1988). Compare *Rockland-Atlas Natl. Bank* v. *Barry*, 336 Mass. 220, 222-223 (1957).

2. Commerce next argues that the judge's finding that Hayeck was fraudulently induced into executing the notes was not supported by the evidence. A judge's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). The sufficiency of the evidence is a question of law subject to review by an appellate court. *Howard* v. *Burlington*, 399 Mass. 585, 588 (1987).

"One party cannot enforce a contract against another whose signature he has procured by fraud or fraudulent representations, which induced the signer reasonably to believe and understand that the instrument was substantially different from what it really was." *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52, 55 (1941). See Restatement (Second) of Contracts § 164(1) (1981). To establish fraud in the inducement, and thereby be relieved of the effect of the notes, Hayeck was required to establish the elements of common law deceit, *Plumer* v. *Luce*, 310 Mass. 789, 801-802 (1942), which include "misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying." *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 365 (1993). "[T]he parol evidence rule does not apply when the complaining party alleges fraud in the inducement." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 711 n.5 (1990).

The judge found that at the time the note was signed in December, 1991, Bryson told Hayeck that an arrangement had been made for the funds to *remain* on deposit as security for repayment of the loan. Hayeck testified that when the note was presented to him he noticed something about collateral and that

impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Bryson told him "the money was going to be deposited in a CD." Hayeck "was satisfied with that." The judge found that the money was in fact deposited in an account. There was no evidence of any other statement. Hayeck could not have been induced to sign the note because of a misrepresentation made by Bryson as to the terms of note, as none was made. Contrast *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. at 55. See Restatement (Second) of Contracts §§ 164, 166 (1981).

Alternatively, there was no evidence that Bryson ever misrepresented an intention or a promise to Hayeck that the note would be secured by an irremovable certificate of deposit in the amount of the loan proceeds while at the time having no intention of following through, and that the misrepresentation remained operative at the time of signing. See *Fanger* v. *Leeder*, 327 Mass. 501, 505-506 (1951); *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. at 709, 712. Hayeck testified that when Bryson first approached him, Bryson had only represented that the note would be secured by a certificate of deposit in the amount of the loan, together with a pledge of NENMCO's stock. There was no evidence of Bryson's intentions at the time he made that statement, see *McComb* v. *C. R. Brewer Lumber Co.*, 184 Mass. 276, 278 (1903), and there was no evidence that Bryson misled Hayeck to believe that the collateral would *remain* on deposit at Commerce for repayment of the loan.

More important, there was no evidence that Hayeck relied upon any misrepresentation about the note that could have been charged to Commerce. Bryson was not an agent of Commerce, and Hayeck spoke to no one from Commerce at the time. See *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. at 56; *Freedley* v. *French*, 154 Mass. 339, 340 (1891). There was no evidence that Commerce knew or should have known of any misrepresentation made by Bryson to induce Hayeck's signature. Compare *New Bedford Inst. for Sav.* v. *Gildroy*, 36 Mass. App. Ct. 647, 654-655 (1994). See Restatement (Second) of Contracts § 164(2) (1981). There was no evidence that Hayeck had seen the loan history documents before signing either note. The evidence does not support a finding that Hayeck was fraudulently induced by Commerce to sign the December, 1991, note. Hayeck was bound, therefore, by the terms of a note he voluntarily signed but did not read. See *Farrell* v. *Chandler, Gardner & Williams, Inc.*, 252 Mass. 341, 345 (1925).

3. Commerce also challenges the finding that Hayeck was

fraudulently induced to sign the renewal note. The judge found that Gennaro misled Hayeck to believe that Commerce "*was* holding $65,000 in a separate NENMCO account from which the loan would be repaid" before Hayeck signed the renewal note (emphasis original). There is support for the finding that Gennaro misled Hayeck to believe that a $65,000 certificate of deposit was in place as collateral and that Hayeck reasonably relied on Gennaro's misrepresentation when he signed the renewal note, though Gennaro never said anything that reasonably could be construed as a representation that collateral would never be released.

Commerce contends that even if Hayeck were fraudulently induced to sign the renewal note, he failed to show that he was harmed. See *Ravosa* v. *Zais*, 40 Mass. App. Ct. 47, 54 n.12 (1996). We agree. Had Hayeck learned that Bryson drew down the account containing the loan proceeds and refused to sign the renewal note, his position would have been no different. Hayeck was liable on the original note. As discussed above, even if Commerce held a $65,000 certificate of deposit as collateral, it was under no obligation to apply the collateral to the debt before commencing suit. *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. at 608-609. There was no evidence that Hayeck's ability to recover from Bryson deteriorated between the time of Gennaro's misrepresentation and the date Commerce filed suit. There was no evidence that as a result of any misrepresentation Hayeck was deprived of an opportunity to attach NENMCO's funds on deposit with Commerce or to enjoin their release by January 22, 1993, the date NENMCO's accounts were closed. Hayeck's own testimony indicated that he secured an agreement from Bryson's administratrix to indemnify him for Commerce's claim in exchange for his efforts to close Bryson's pending HUD loans, for which he would also derive a commission.

Notwithstanding the dissent's contention that counsel for Commerce made a judicial admission that the second note may have superceded the original note, the issue remained alive. "Whether a note is given and received in payment of an existing obligation or note, or is given and received in renewal or extension of an existing obligation or note, is a question of fact, in the absence of agreement of the parties to that end." *Freedman* v. *Peoples Natl. Bank*, 291 Mass. 168, 171 (1935), quoting from *Anderson* v. *Home Natl. Bank*, 290 Mass. 40, 44 (1935). Compare G. L. c. 106, § 3-601(2), as in effect prior to St. 1998,

c. 24, § 8. Hayeck tried this case on the theory that the renewal note was an extension of the original note, and the judge expressly so found. Where the evidence supports that finding, including Commerce's retention of the original note and not stamping it as paid, *Freedman* v. *Peoples Natl. Bank, supra* at 170, we will not disturb the judge's finding. Compare and contrast *Rosen* v. *Shapiro*, 272 Mass. 277, 280 (1930).

The coexecutors are not aided by the argument, which they never raised but is raised by the dissent, that Hayeck has no liability because the original note was discharged by the renewal note, see *Stebbins* v. *North Adams Trust Co.*, 243 Mass. 69, 73-74 (1922), and the renewal note is unenforceable as having been induced by fraud. The law does not permit a person to escape liability for an otherwise legitimate debt under that construct. A creditor, even one having fault in the making of an illegal or fraudulent renewal note, is permitted to sue on an original valid obligation in these circumstances. See *Curtis* v. *Hubbard*, 9 Met. 322, 328 (1845); *Walker* v. *Mayo*, 143 Mass. 42, 44 (1886); *National Granite Bank* v. *Tyndale*, 176 Mass. 547, 549 (1900); *Bennett* v. *Tremont Sec. Co.*, 221 Mass. 218, 222 (1915).

The dissent also suggests that the original note was unenforceable as designed to carry out an illegal scheme. While we appreciate the unsavory aspects of the transaction as pointed out by the dissent, because the parties have never raised that issue, and having no adequate record on the matter, we have no basis to consider it.

4. Hayeck contends that Bryson and Commerce had agreed that the loan proceeds would be deposited in an account at Commerce, and that Commerce would hold the money as trustee for repayment of the loan. When Commerce allowed Bryson to transfer $50,000 in January, 1992, and when it released the balance to NENMCO after Bryson's death, Hayeck argues that it violated the terms of that trust. Hayeck contends that Bryson told him of this agreement, and that he was a beneficiary of the trust.

The success of this theory depends not on whether the parties agreed that the loan proceeds were to have been held as collateral for the note (we have disposed of that issue), but on the existence of a second, separate agreement. We decline to consider Hayeck's argument, presented for the first time on appeal, because it is based upon a different theory than that on

which the case was tried, and prejudices Commerce by denying it the opportunity to pursue undeveloped factual issues, including the acceptability to HUD of using funds held in a trust restricted to payment of the note to meet net worth requirements. See *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 257 (1970); *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977). Contrast *Bond Bros.* v. *Robinson*, 393 Mass. 546, 552 (1984) (no prejudice where case submitted on stated facts decided on theory not argued in trial court or in Appellate Division, but issue correctly identified by the Appellate Division). It is also doubtful that the theory is viable, where the judge found that the deposit of the proceeds in the NENMCO account, a noncustodial account, on December 11, 1991, complied with the understanding between Bryson and Commerce.

5. Hayeck claims that the judge dismissed his c. 93A counterclaim because he found that Commerce (and Bryson) had acted negligently, rather than knowingly. Relying upon *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 234-235 (1985), he argues that this was error in view of the finding that they negligently misrepresented the status of the $65,000 proceeds as collateral for the notes. While perhaps an accurate statement of law, it is neither an accurate representation of his counterclaim nor an accurate description of the judge's ruling.

At the close of the evidence, Hayeck presented requests for rulings of law as to his counterclaim in which he articulated a theory of liability under G. L. c. 93A that Commerce had acted unfairly by permitting Bryson to wrongfully divert funds which Commerce knew Bryson held for the particular purpose of securing payment of the note. As factual support he relied upon Bryson's withdrawal of $50,000 from the NENMCO account. In support of the theory he appropriately cited *Dahlborg* v. *Middleborough Trust Co.*, 16 Mass. App. Ct. 481, 484 (1983). That case prescribes proof of knowledge, actual or constructive, that the other party (Bryson) wrongfully diverted funds. The judge accepted Hayeck's theory of liability, but found that Commerce did not act knowingly. There was no error. The scenario presented on appeal never occurred, and we do not consider it.

The judgment for Hayeck on Commerce's complaint is reversed. Judgment is to enter for Commerce for the balance due on the renewal note, with interest and costs. The judgment dismissing Hayeck's counterclaim is affirmed.

*So ordered.*

GILLERMAN, J. (dissenting). Because I am persuaded, for a number of reasons, that the majority has reached the wrong result, I dissent.

This was a tawdry affair. Bryson, as the majority observes, applied to Commerce for a $65,000 loan so that Bryson could contribute the loan proceeds to NENMCO, thereby increasing NENMCO's net worth. This injection of capital was necessary if NENMCO was to qualify as an approved lender for HUD. However, a contemporaneous memorandum handwritten by the chief executive officer of Commerce records the understanding that NENMCO was to use the loan proceeds to buy a "CD [i.e., a certificate of deposit] [which was to be] pledged to Bank. Stock to[o]."

An additional typewritten memorandum from the loan file of Commerce, dated the date of the closing on the first loan, confirms the agreed arrangement: "Repayment [of the loan] will come from cash flow of [NENMCO] *or from a $65,000 certificate of deposit* which [NENMCO] will have in our bank once the note closes . . . . [or] from personal assets of Bryson" (emphasis added).

Since Bryson did not have the credit to borrow $65,000, he persuaded his friend Hayeck, who was credit worthy, to be his comaker of the note on Bryson's assurance, as the judge found (see below), that the loan would be secured by a CD purchased with the loan proceeds.

The history continues: there never was a CD. Instead, the proceeds of the loan were deposited in a NENMCO account, but the judge found that this was done "to comply with the . . . understanding between Commerce and Bryson (that the funds would *remain on deposit* at the bank as security for repayment of the [Bryson/Hayeck] loan). Hayeck was led by Bryson to believe that this arrangement was in place when he co-signed the note."[1] (Emphasis added.)

Thus Commerce, Bryson, and Hayeck entered into an unlawful scheme to conceal from HUD the fact that the apparent increase in the net worth of NENMCO was in fact false. That is enough to make the contractual arrangements — designed to carry out an illegal scheme — unenforceable. See *Tocci* v. *Lembo*, 325 Mass. 707, 708-710 (1950) (a contract which

---

[1]Without doubt, Hayeck was a third-party beneficiary of the agreement between Commerce and Bryson described by the judge.

contemplates the violation of a governmental regulation is illegal, and a contract, the performance of which was in violation of Federal regulations, was held unenforceable). See also *Green* v. *Richmond*, 369 Mass. 47, 51 (1975) ("Massachusetts law will not enforce . . . a contract to commit a crime"). Commerce held an uncollectible note.[2]

Continuing: when the first note fell due, and a renewal was necessary, the judge found that Gennaro, the loan officer, by negligent misrepresentations "fraudulently induced" Hayeck to sign the second note.[3] See *Graves* v. *R.M. Packer Co.*, 45 Mass. App. Ct. 760, 767 n.12 (1998), and cases cited therein.

The majority argues that Gennaro's fraudulent inducement of Hayeck's signing of the second note comes to nothing because Hayeck was not harmed by the fraud: he would have been liable on the first note. I disagree.

The first note, as I have said, was unenforceable. Even if this were not so, I disagree with the majority because:

(i) the judge asked counsel for Commerce: "The renewal note superseded and may no longer be effected [*sic*] by the original note; is that right?" Counsel for Commerce answered: "That's correct." That admission is binding upon Commerce. See Liacos, Massachusetts Evidence § 2.5 (6th ed. 1994) (counsel may make a judicial admission binding upon his client by statements of counsel during the trial); and

(ii) it is a "long established presumption here existing . . . that the giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded." See *Dow* v. *Poore*, 272 Mass. 223, 227 (1930).[4] That presumption is rebutted only where the security for the original debt would be released to the detriment of the

---

[2]This point has not been argued by Hayeck, but that is of no consequence. An appellate court may, "[w]here injustice might otherwise result , . . . consider questions of law which were neither argued nor passed upon in a court or agency below." *McLeod's Case*, 389 Mass. 431, 434 (1983). *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509 (1988).

[3]The judge found that Gennaro "assured Hayeck that the bank *was* [emphasis in original] holding the $65,000 in a separate NENMCO account from which the note would be repaid." The judge found that in fact Bryson had withdrawn $50,000 from the NENMCO account "which Gennaro admitted he could readily have ascertained, had he bothered to do so."

[4]The majority argues that this was an argument first made on appeal, suggesting a defect on that account. I disagree. When the party who *prevails* below makes a new argument on appeal, we can adopt that argument — and

creditor. *Ibid.* Here, the collateral for the second note was exactly the same as the collateral for the first note. Indeed the pledge agreement referred to in the first agreement is the same pledge agreement referred to in the second note. There being no release of the collateral for the first note — other than the withdrawal of $50,000 from the NENMCO account without objection from Commerce — the presumption is not rebutted.

Finally, the judge found that, after Bryson's death, Commerce, piling Pelion on Ossa, paid out all the funds remaining in NENMCO accounts "to NENMCO and/or to Bryson's widow [at a time when] Commerce was aware of the outstanding loan and its arrangement with Hayeck and Bryson that the $65,000 would be held and used solely to ensure repayment of the loan. Although there were also other NENMCO and personal Bryson funds on deposit at the bank, none of these were ever 'set off' to reduce the loan, and Commerce never attempted to exercise its voting rights in the stock so as to effectuate repayment from NENMCO's bank accounts or other assets."

To this I would add only the Hayeck 93A counterclaim for negligent misrepresentation stated a good claim under *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 234-235 (1985).

Commerce cannot, with justification, assert a claim against Hayeck who, to the knowledge of Commerce, did no more than cosign the note as an accommodation to Bryson and with one hundred per cent collateral. For this, Commerce deceived Hayeck, and now seeks to collect a debt it should have, and could have, collected either from a NENMCO CD or the NENMCO corporate accounts. The result reached by the majority, in my view, works a substantial injustice. The complaint of Commerce should be dismissed, and Hayeck's estate should recover its costs and attorney's fees under c. 93A.

---

often do — on the theory that the judge can be "right for the wrong reason, even relying on a principle of law not argued below." See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992).